## STATE VS. BRUNELL.

*Criminal Law. Evidence.*

1. On an indictment (under sec. 9, chap. 170, R. S.) for keeping "a house of ill fame, resorted to for the purpose of prostitution or lewdness," the prosecution must first show that defendant kept the house in question, and may then show its general reputation and that of its frequenters and of the defendant; and if these satisfy the jury that the house was of the kind described in the statute, they may so find, without proof of particular acts of prostitution or lewdness occuring therein.

2. But proof that the reputation of the house, or of its frequenters and the defendant was bad in that respect, is not *conclusive* of defendant's guilt.

3. The offense described in the statute is not keeping a house which *is reputed* to be a bawdy house, but keeping one which is so in fact.

4. It was error, therefore, in such a case, to instruct the jury that if defendant kept the house during the time laid in the indictment, and if during that time the reputation of the house was that it was a house of ill fame, they must find him guilty.

5. A defendant can take advantage of a misnomer only by plea in abatement. If he pleads in bar, it is immaterial whether he is indicted by his right name or not.

CERTIFIED from the Circuit Court for *Outagamie* County. Indictment for keeping a house of ill-fame. Exceptions were taken at the trial to the allowance of an amendment to the indictment by inserting the name of "Henry" instead of the initial "H"; to the admission of evidence as to the character of the defendant; and to several of the instructions given to the jury. Those which are material sufficiently appear in the opinion of the court.

*Hudd & Wigman,* for defendant, contended that sec. 27, chap. 137, Laws of 1871, does not apply to an indictment previously found so as to authorize a material amendment; and that there must be positive proof that the defendant has acted or held himself out as keeper of the house, before proof of his character can be admitted. Proof of reputation is not sufficient. 2

Bishop on Crim. Procedure, § 80; *State v. McDowell*, Dudley (H.) Law, 346; *Cadwell v. State*, 17 Conn., 467; *State v. Hand*, 7 Iowa, 411; 2 Wharton Crim. Law, 2393; 3 Greenl. Ev., § 186; 2 Dana, 418; *Commonwealth v. Stewart*, 1 S. & R., 342; *Smith v. Commonwealth*, 6 B. Mon., 28.

The *Attorney General*, for the state, held that the amendment was immaterial, since the same evidence could have been received, and the same judgment given, without it; and that proof of the character of the defendant was admissible as tending to prove the character of the house, citing *United States v. Stevens*, 4 Cranch C. C. R., 341; *United States v. Gray*, 2 id., 675.

LYON, J. The defendant was indicted in the circuit court for Brown county, for keeping in said county, at the times stated in the indictment, "a certain house of ill fame then and there resorted to for the purposes of public prostitution and lewdness." The place of trial was changed to the circuit court for Outagamie county; and the defendant was tried in the latter court, and convicted of the offense charged in the indictment.

The case comes to this court upon exceptions duly taken and allowed at the trial, pursuant to chap. 130, R. S., sections 7, 9 and 10.

One of the exceptions is to the following instruction given by the court to the jury; "5th. If the evidence satisfies you beyond all reasonable doubt that the defendant was the keeper of the house in question during any part of the time referred to in the indictment, and that during that time the reputation of the house was that it was a house of ill fame, your verdict must be that the defendant is guilty."

Two facts must be established by the evidence before the defendant can be lawfully convicted. These are, 1st. That the house in question was "a house of ill fame, resorted to for the purposes of public prostitution and lewdness," or, what is the same thing, that it was a common bawdy house; and 2d. That

State vs. Brunell.

the defendant was the keeper thereof. It seems clear, upon principle, that general reputation of the existence of one of these facts is not, of itself, sufficient to prove the fact. Yet the jury were instructed, in effect, not that the general reputation of the house in question was a circumstance tending to show its true character, but that such general reputation was conclusive of its character. We think the instruction was erroneous in this respect. It makes the offense consist in keeping a house *reputed* to be a common bawdy house, without regard to the question as to whether it is, in fact, a house of that character.

The strongest case in support of the instruction to which our attention has been called, is that of *The State v. McDowell*, Dudley (S. C.), 346, which holds that, after the defendant is shown to be the keeper of the house alleged to be a bawdy house, all the rest of the proof essential to a conviction may be derived from mere reputation. In that case the defendants were women, and the testimony showed or tended to show that they were reputed to be common prostitutes, and that their house was reputed to be a common bawdy house. This was held to be competent evidence in the case to be considered by the jury, and upon which the jury might, if they chose to do so, convict the defendants of the offense charged. But the case does not hold that evidence that the house was generally reputed to be a bawdy house, was *conclusive* evidence that it was a bawdy house. It only holds that such evidence is competent, and is to be considered by the jury, who will give to it the weight and importance to which, in view of all the facts in the case, it is fairly entitled.

We think the correct rule of evidence in this case and in like cases, is, that the prosecution must in the first instance introduce testimony showing or tending to show that the defendant is the keeper of the house alleged to be a common bawdy house; and then testimony of the general reputation of the house, of the persons frequenting the same, and of the defendant, is admissible, as tending to show the real character of

the house.   The prosecution is not required to show particular acts of lewdness or prostitution in the house.   If the evidence demonstrates that it is resorted to by people of both sexes who are reputed to be of lewd and lascivious character, and that it is generally reputed to be a bawdy house, the jury are authorized, if they see fit, to find therefrom that it is a bawdy house. And the more especially are they authorized so to find, if it further appears that the general reputation of the keeper of the house is as bad as the reputation of those who frequent it. But, however strong and conclusive the evidence of such general reputation may be against the defendant, still it is error for the court to instruct the jury that it proves conclusively that the house in question is a bawdy house.   The jury and not the court, are to find from the evidence how the fact is.

The rule of evidence here laid down is believed to be sound in principle, and to accord with all, or nearly all, of the authorities on the subject.   *State v. McDowell, supra ; Caldwell v. The State,,* 17 Conn., 467; *State v. Hand,* 7 Iowa, 411; 2 Bishop on Criminal Procedure, secs. 89 to 96.

Exceptions were also taken on the trial, and allowed to other instructions given to the jury, and to the admission of certain testimony.   It is quite unnecessary to pass upon these exceptions in detail, or even to make a statement of them.   When the cause is again tried, the circuit court will readily conform its rulings and instructions to the rules above stated.

The defendant was indicted by the name " *H. Brunell,*" and the court allowed the district attorney to amend the indictment by inserting " *Henry,*" instead of " *H.*"   The indictment was found before the enactment of chap. 137, Laws of 1871, sec. 29 of which allows an amendment of this character to be made to an indictment or information.   It may be that the amendment was irregular, and had the defendant interposed a plea in abatement that his name was " *Henry,*" and not " *H.,*" it is possible that the amendment should have been disregarded, and the plea held good.   He could take advantage of a misnomer in no other

way than by a plea of in abatement. But he did not plead in abatement, but interposed a plea of "not guilty." While this plea in bar stands, it is entirely immaterial by what name he is indicted — whether it be by the name of "H. Brunell" or "Henry Brunell;" whether it be by his right name or by a wrong one. Hence, the amendment was of no importance whatever, and cannot vitiate the indictment, even though the court may have had no power to allow such amendment to be made.

*By the Court* — The case is remanded to the circuit court; and that court is advised and directed to set aside the verdict and grant a new trial thereof.