## STATE, RESPONDENT, v. HENDRICKS, APPELLANT.

[Submitted December 11, 1894. Decided January 21, 1895.]

BAWDY-HOUSE—*Sufficiency of information for maintaining—Bill of particulars.* An information charging the defendant with having kept and maintained at a certain time and place a house of ill fame, commonly called a "bawdy-house," open to the public night and day for common bawdry, and resorted to for the purpose of prostitution and lewdness, and that the defendant, for her own lucre and gain, and men and women of evil name and fame, and of dishonest conversation, did there frequent and come together, and did at said times specified remain whoring, to the common nuisance of all good citizens, is sufficiently specific in its facts, and the court did not err in overruling the defendant's motion requiring the state to furnish a bill of particulars, or more specific statement of facts or evidence whereby to prove the charge.

SAME—*Immaterial variance.*—Where the defendant is charged by information with having kept and maintained a bawdy-house on "Sixth" street, and the proof is that the house was on "North Sixth" street, the variance is immaterial, and cannot prejudice the rights of the defendant.

SAME—*Evidence of general reputation.*—Upon the trial of a person charged with keeping a bawdy-house, evidence of the general reputation of the women who frequented the house, and of the defendant, is competent and admissible, as tending to prove the character of the persons who resorted to the place, and the intent of the keeper, and the general character of the house itself.

SAME—*Evidence of character of house.*—On a prosecution for keeping a bawdy-house it is competent to prove by reputation the character of the house, where there are other facts or circumstances in connection therewith which satisfy

the jury beyond a reasonable doubt, that the house is not only one of ill-fame, but is actually used for purposes of prostitution and lewdness.

SAME—*Instructions—Non-prejudicial error.*—Where, on a prosecution for keeping a bawdy-house, the jury are properly instructed that the actual keeping and use of the house for purposes of prostitution and lewdness must be shown beyond a reasonable doubt, to justify a conviction, an instruction not pertinent to the testimony, that the character of the house could be proved by reputation, is not prejudicial error, where the actual use of the house for bawdy purposes was proved and where no testimony at all as to the reputation of the house was introduced.

*Appeal from Seventh Judicial District, Custer County.*

CONVICTION for keeping a house of ill-fame. Defendant was tried before HENRY, J. Affirmed.

Statement of facts prepared by the justice delivering the opinion:

The defendant was charged by information with having kept and maintained " a certain house of ill-fame, commonly called a 'bawdy house,' open to the public night and day for common bawdry, then and on said other days and times, there situate on Sixth street, in the city of Miles City, county of Custer, and state of Montana, and then and on said other days and times, by her, the said Fannie French, kept and used as a house of ill-fame, and then and on said other days and times there resorted to for the purpose of prostitution and lewdness; and the said Fannie French, in said house, and for her own lucre and gain, certain evil-disposed persons, whose names to said informant aforesaid as yet are not known, as well as men and women of evil name and fame, and of dishonest conversation, do frequent and come together, did then and on said other days and times there unlawfully and wickedly cause, permit, and procure, and said men and women in said house, as well in the day as in the night, then and on said other days and times, there did suffer and permit to be and remain whoring, to the common nuisance of all good citizens, then and on said other days and times there resided, passing, and being, and an evil example to all others in like case, offending and against the peace and dignity of the state of Montana."

The defendant was tried to a jury, and convicted. A judgment of fine and imprisonment was entered against her. By proceeding on writ of certiorari the judgment of the district

court was modified by striking out that part of the judgment of the district court imprisoning the defendant. (See *State ex rel. Hendricks* v. *Seventh Judicial District Court,* 14 Mont. 452.) A motion for a new trial was made in the district court and overruled. Defendant appeals.

*Middleton & Light,* for Appellant.

The information charges in general terms a common-law nuisance, covering a period of seven months, and the court, on the defendant's application, should have required the prosecution to furnish her with a bill of particulars of the evidence intended to be relied upon. (Wharton's Criminal Pleading and Practice, § 702; 3 Rice on Evidence, 67; 2 Wharton's Criminal Law, § 1429.) The defendant is entitled to the benefit of the rule, that, where the location is a matter of local description and not as venue, it becomes necessary to prove it as laid. (Wharton's Criminal Evidence, § 109; *Chute* v. *State,* 19 Minn. 271.) In the case at bar the description of the location is that the house is on "Sixth" street, and the evidence shows that it is on " North Sixth" street. It is on questionable authority that the character of the house may be shown by evidence. (20 L. R. App., c. 609, note; 2 Bishop's Criminal Procedure, § 113.) The character of the inmates and those frequenting a house may be shown, but not for the purpose of proving the offense charged. This being a trial for a nuisance, it is not sufficient to show that the general reputation of the subject of the nuisance charged was that of a nuisance—in other words, the house must be proved to be a house of ill-fame by facts and not by fame. (Wharton's Criminal Evidence, § 260; 4 Lawson's Defenses to Crime, 744; *Drake* v. *State,* 14 Neb. 535.) The court erred in admitting testimony, over the objection of the defendant, as to the character or reputation of the defendant as to being a virtuous woman or a prostitute. The defendant was not put upon the witness-stand, nor was any evidence introduced on the part of the defense touching her character, and her reputation as to being a prostitute or otherwise was not an issue in the case. (Bishop's Criminal Procedure, § 1112; Wharton's Criminal Evidence, § 64; *State* v. *Rainsbarger,* 71 Iowa, 746; *State* v.

*Hull,* 18 R. I.     ; *People* v. *White,* 14 Wend. 111; *Carter* v. *State,* 36 Neb. 481; *Linton* v. *State,* 88 Ala. 216.)

*H. J. Haskell, attorney general, Ella L. Knowles,* and *C. H. Loud,* for the State.

HUNT, J.—The errors relied on will be noticed as presented by the briefs. Defendant moved the court to require the county attorney to give her a bill of particulars—that is, "a more specific statement of facts or evidence upon which the plaintiff will rely in the trial of said cause." We think the court correctly overruled this motion. The information was sufficiently specific in its facts; and the charge was so plainly stated that the particular evidence which the state intended to produce was properly withheld from defendant until trial.

As will be observed by the information, the house is alleged to be situate on Sixth street, in the city of Miles City. On the trial the state's witnesses swore that the street was Sixth, and was known as Sixth, but the defendant introduced a plat of Miles City, showing that the house was on North Sixth street. Granting that this was a variance it was an immaterial one, and could not prejudice the rights of defendant.

Upon the trial witnesses were asked as to the general reputation of the women who lived in the house—whether they were virtuous or not. The same question was asked in relation to defendant herself. These questions were all objected to as incompetent. We are of opinion that the better reasoning sustains the ruling of the court in permitting proof of the general reputation for prostitution and lewdness of the persons, inmates of the house. It tends to prove the character of persons who resort to the place, and the intent of the keeper, and the general character of the house itself. The illicit acts which establish a woman's character as a prostitute are very difficult to prove; and, of necessity, in order to place sufficient facts before a jury from which they may draw common-sense and legitimate inferences, there are a few classes of cases, of which this is one, where, to develop truth, character may be affirmatively proved by the prosecution, and by hearsay evidence of general reputation. (*Commonwealth* v. *Gannett,* 1 Allen, 7; 79 Am. Dec. 693; *Commonwealth*

v. *Kimball*, 7 Gray, 329; 2 Bishop's Criminal Law, § 112; *State* v. *Hull* (R. I.), 26 Atl. Rep. 191; 20 L. R. A. 609; Wharton's Criminal Evidence, § 261; *State* v. *Brunell*, 29 Wis. 435; *State* v. *McDowell*, 1 Dud. (S. C.) 346; *Territory* v. *Stone*, 2 Dak. 155; *Drake* v. *State*, 14 Neb. 535.)

This view being supported by the weight of authority, it is difficult to see why the reputation of any particular inmate of the bawdy house should not be inquired into because such inquiry may involve the defendant herself. The principle of law that the character of a defendant may not be attacked by the state unless she puts her character in issue by her defense cannot be said to be violated because the evidence of her reputation is not admitted to prove that, inasmuch as the defendant is a prostitute, she is, therefore, a bad woman, and thus would be more likely to commit the crime charged against her, but as bearing upon a material issue in the information—that is, the character of the inmates of the house, of which she may happen to be one, and the character of the house, and the intent of the keeper. For these purposes we hold that, in cases like the one at bar, such evidence is competent and proper, particularly when limited by an instruction to the jury as to its applicability. A woman may live as the sole inmate and keeper of a bawdy house; yet, if several of the cases cited by appellant correctly state the law, although the reputation of the inmates of a bawdy house is a proper subject of investigation, still there could be no testimony offered to prove the fact that she was by reputation a prostitute, simply because she was the person charged with the offense. We think such a distinction is not well founded, and prefer to lay down the rules fixed in those cases which put the defendant keeper, if an inmate, on a plane with the others, whose characters become matters of common repute. (See *Sparks* v. *State*, 59 Ala. 82, and *State* v. *Brunell, supra*.)

The court charged the jury, by instruction No. 11, as follows: "It is competent for the state to prove by reputation the character of the house, and of the inmates, and of those who frequented the house, for the purpose of proving the character of the house kept; but whether or not the defendant was the actual keeper of said house cannot be proven by repu-

tation.   You must be satisfied by other proofs, beyond a reasonable doubt, that she was the keeper, before you can find her guilty."   The *use of* the house being material, the appellant argues that this statement of the law by the court was error. She contends that even if the court holds that the reputation of the inmates of a bawdy house may be legally proved to be bad, for purposes herein discussed, nevertheless the character of the house itself may not be so proved, but that positive evidence must be adduced for that purpose.   There are a few cases which decide that, where the house has the reputation of being bawdy, the jury may find as a fact, from such evidence alone, that it is a bawdy house, and is used as such; but we are of opinion that, the use of the house for evil purposes being a material fact, there should be proof of such actual use, and that reputation alone, without such proof, is insufficient. Such was evidently the theory of the county attorney in the conduct of this case, because he carefully avoided the introduction of any testimony pertaining to the reputation of the house, and relied entirely upon proof of facts of a most positive nature.   We do not hold that the state *must* prove the reputation of the house, as do some cases (*Cadwell* v. *State*, 17 Conn. 467), but that, while evidence of its general reputation is competent as bearing upon its character, yet there must be some testimony of its actual use as a house of ill fame.   (*State* v. *Smith*, 29 Minn. 193; *State* v. *Boardman*, 64 Me. 523; *Toney* v. *State*, 60 Ala. 97; *State* v. *Lee*, 80 Iowa, 75; 20 Am. St. Rep. 401).   This proof may be made by showing, as was done in this case, the gathering at the place of men and women for illicit commerce of the sexes, by the lewd conduct of such persons, by their obscene language and profanity, or by other facts and circumstances from which may be deduced the conclusion that the house was in fact used for purposes of prostitution and lewdness.

By the instruction above quoted the jury were told that the character of the house could be proved by reputation.   This is the law, provided there are other facts or circumstances in connection with such evidence of the reputation which satisfy the jury, beyond a reasonable doubt, that the house is not only one of ill fame, but is used for purposes of prostitution and

lewdness. But that portion of instruction No. 11 just examined was inapplicable to the case at bar, for the reason, as stated before, that there was no testimony at all introduced by the state to prove the reputation of the house in question. The charge was not pertinent, and, although by itself incomplete, yet defendant cannot complain, provided the jury could not have been misled, and provided, further, the law was fully and correctly stated elsewhere in the charge.

We have made a most careful examination of the entire instructions given to the jury in this case, and our conclusion is that the law was correctly stated. By instruction No. 4, the court, after telling the jury that a person might be convicted of the crime charged if she knowingly permitted any of the inmates of her house to use any portion thereof for the purposes of prostitution and lewdness, expressly charged them, among other things, that such a *use* was necessary to justify conviction. The language given was as follows: "And you further find from the evidence, beyond a reasonable doubt, that said house was so used and occupied, . . . . then the defendant would be guilty of the crime charged in the information." The sentence quoted was a correct statement of the law predicated upon the evidence. It told the jury what must be proved, and, upon the point under consideration, was a fair statement of the whole law applicable to the testimony adduced on the trial. But, again, the jury was told, in instruction No. 18, that, to constitute a nuisance, the house must be *kept* as a place of public prostitution. This was also proper, and, when considered with instruction No. 4, required the jury to be satisfied by the evidence, beyond a reasonable doubt, that the house was both *used* and *kept* for bawdy purposes. In the light of these instructions, and the overwhelming weight of testimony to support the verdict, the jury could not have been misled in their deliberations. Moreover, the court did not assume in instruction No. 11 to state all the facts necessary to sustain a conviction; and, inasmuch as the essential elements of the offense were properly charged in other instructions based on the testimony, the defendant could not have been [injured by an incomplete, but wholly

inapplicable, statement of law. (*Bird* v. *State*, 107 Ind. 154; Thompson on Trials, 2407.) The judgment heretofore modified by this court is sustained.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.