# Staunton

MARY MCNELIS, ET ALS. V. COMMONWEALTH OF VIRGINIA.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*W. J. Austin, Jr.,* and *T. W. Messick,* for the plaintiffs in error.

*Abram P. Staples, Attorney-General,* and *G. Stanley Clarke, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

This writ of error brings under review a judgment of the Hustings Court of the city of Roanoke whereby certain premises in the city of Roanoke, owned by Mary McNelis, Anne McNelis, Bridget Boyle and Mary Foy, were ordered "padlocked, barred and closed," for the reason that they were being used in violation of the provisions of section 55 of the Alcoholic Beverage Control Act. Code 1936, section 4675(55).

Section 55 of the A. B. C. Act reads as follows:

"All houses, boat-houses, buildings, tents, club, fraternity and lodge rooms, boats, cars and places of every description including drug stores, where alcoholic beverages are manufactured, stored, sold, dispensed, given away or used contrary to the law by any scheme, or device whatever, shall be held, taken and deemed common nuisances. Any person who shall maintain or who shall aid or abet or knowingly be associated with others in maintaining such common

nuisances, shall be guilty of a misdemeanor and in addition thereto, judgment may be given that such house, building, tent, boathouse, car or other place, or any room or part thereof, be closed up, but the court may upon the owner giving bond in the penalty of not less than five hundred dollars and with security to be approved by the court, conditioned that the premises shall not be used for unlawful purposes, or in violation of the provisions of this act for a period of five years turn same over to its owner; or proceeding may be had in equity as provided in section 4675 (56) ."

The judgment of the court is based upon the following facts: Floyd M. Smith leased from the plaintiffs in error a certain house situated at 109½ East Church Avenue, for the purpose of conducting a rooming house. In the execution of a search warrant issued by the police justice, it was ascertained that Smith was conducting what is known as a "nip joint"—that is, a place where intoxicating liquors are illegally sold or dispensed by the drink. Smith was tried and convicted upon a warrant issued by the police justice, which charged him with unlawfully conducting a nuisance upon the premises, in violation of the provisions of section 55 of the A. B. C. Act. From the judgment of the police justice, Smith appealed to the Hustings Court. Thereupon, a trial by a jury was had and Smith was again found guilty of conducting a nuisance, and in accordance with the verdict of the jury, judgment was pronounced against him by the court. That judgment of the Hustings Court, entered on the 21st day of June, 1937, has this day been affirmed by this court.

In addition to the judgment against Smith, the trial court, being of opinion that section 55 of the A. B. C. Act vested it with the authority to padlock the premises occupied by Smith, entered the judgment now complained of.

On the 17th day of August, 1937, plaintiffs in error appeared in open court and asked permission to file this petition:

"Your petitioners, Mary McNelis, Annie McNelis, Bridget Boyle and Mary Foy respectfully represent:

"That they are the owners of premises located at 109½ E. Church Avenue, in the City of Roanoke, Virginia. That said premises are located in the business section of Roanoke City and that the lower floor of said premises is leased for a store room. That the upper portion of said premises is leased to Floyd M. Smith for the purpose of operating a rooming house.

"That your petitioners were advised by their tenant, Floyd M. Smith, that on the 21st day of June, 1938, he was convicted in the Hustings Court for the City of Roanoke, Virginia, on a charge of violating section 55 of the Alcoholic Beverage Control Act, and that as a part of the judgment of this court it was ordered that your petitioners' property be padlocked. Your petitioners have investigated the information obtained from the said Smith and find that by order entered on the 21st day of June, this Honorable Court directed that said property belonging to your petitioners be padlocked.

"Your petitioners further represent that they are absolutely innocent of any unlawful use to which said premises were put by the said Smith, if in fact there has been any unlawful use. That they had no knowledge that ardent spirits were stored or used in any manner on said premises if in fact there was any use of same. That if the said Smith, their tenant, has in any way violated the laws of this State that the same were violated without the knowledge, consent or approval of your petitioners and that they have not in any manner aided or abetted or connived with the said Smith to use said property for any unlawful purpose.

"Wherefore your petitioners pray:

"1. That they be permitted to file their petition in this cause.

"2. That the Commonwealth be given notice of the filing of said petition.

"3. That they be given a hearing to determine whether or not they, as owners, should suffer the penalty of having their property confiscated or padlocked.

"4. That this court will, by proper order, relieve your petitioners of the penalty imposed against their property.

"That all such other things be ordered and done as may be necessary to afford your petitioner's full and complete relief in the premises.

"And your petitioners will ever pray, etc."

The attorney for the Commonwealth opposed the motion to file the petition and the court being of opinion that the Alcoholic Beverage Control Act (section 55), makes no provision for the owner of the premises ordered padlocked to be heard and his rights determined, sustained the motion of the attorney for the Commonwealth and denied the relief prayed for.

The action of the court in ordering the premises padlocked, in the first instance, and in refusing to permit plaintiffs in error to file their petition contesting that action of the court, is assigned as error.

It is the contention of plaintiffs that section 55, *supra,* contains no provision by which the owner of the property may appear and contest the confiscation of his property, and, therefore, section 55 of the act in that particular is in contravention of section 11 of the Constitution, which provides that "no person shall be deprived of his property without due process of law."

It is unquestioned that the legislature has the power to provide for the forfeiture of property used in the violation of a penal statute. In section 38-a of the Alcoholic Beverage Control Act, Code 1936, section 4675(38a), the legislature has exercised its power in that respect. In that section it is provided that if any vehicle or conveyance is used for the illegal transportation of alcoholic beverages, the same may be seized and forfeited. However, before such forfeiture can be had, all persons interested in the seized property, whether owner or lienor, are made parties defendant to the information filed by the Commonwealth, and afforded an opportunity to contest the right of forfeiture.

When we examine section 55 of the act under review, we find no provision by which the owner or other person in-

terested may appear and contest the right of the Commonwealth to confiscate his property. In fact, there is no provision in the act that the owner or other person interested shall even have notice that the Commonwealth contemplates a confiscation of the property.

The point is made by the Attorney General that provision is made for the owner to give bond with approved security and repossess the property, and therefore, the due process clause of the Constitution has been complied with.

The bond provision does not, in our opinion, take the place of a provision for notice to an innocent owner of property sought to be padlocked, nor was it so intended.

It might be argued that the prosecution of a guilty owner is sufficient notice to him, or that his appearance and giving a bond is a waiver of the required notice as to him. But this reasoning would not be applicable to an innocent owner, because he is not a party to the prosecution of a guilty occupant of the premises and might not even know of it. In that case he (the innocent owner) would have no opportunity whatever of protecting his rights before his premises had been padlocked and closed.

In the briefs of counsel numerous cases have been cited which deal with questions similar to the question in the instant case. Most of them are Federal cases and deal with the application of the Federal statutes, and, therefore, it is unnecessary to differentiate them.

In 12 Corpus Juris, section 1036, there is found a discussion of the doctrine contended for by the plaintiffs.

While not on all fours with the case at bar, the case of *Boggs et als.* v. *Commonwealth*, 76 Va. 989, is illuminating. The facts of the case are as follows:

"Boggs and Waters owned the schooner '*Mary Tauline.*' They sold this vessel to E. O. Kellam for $850, for which he executed his bond. The title to her was withheld until the whole of the purchase money should be paid, and she remained enrolled in their names as owners at the port of Onancock, in Accomac county, Virginia. Without the knowledge or consent of Boggs and Waters, Kellam employed this

vehicle in violating the oyster laws of this State, by taking oysters with *dredges* in the waters of Chesapeake bay, opposite Gwyn's island, in said county; and whilst so employed, Sands Smith, sheriff of said county, arrested Kellam and seized the vessel.

"In March, 1882, Kellam and the six other appellants were in said county court indicted for felony, under the act passed 6th March, 1880 (see Acts 1879-'80, p. 197), and plead guilty, and were sentenced to the penitentiary for one year.

"Afterwards, on the 20th March, 1882, without any evidence that the vessel had been illegally employed, the county court ordered this vessel to be sold as forfeited to the Commonwealth. When Boggs and Waters heard of the order of sale, having had no opportunity to assert their rights of property in the vessel, they filed their petition and tendered evidence to prove the facts therein set forth, but the county court ordered the dismission thereof, to which judgment they excepted.

"They next applied to and obtained from the Honorable Benjamin W. Lacy, judge of the circuit court of said county, a writ of error and supersedeas to said judgment.

"On the 17th June, 1882, the circuit court affirmed the judgment, and retaining the cause, ordered the said sheriff within ten days from the rising of the court to sell the said vessel and deposit the proceeds of the sale in the Planters National Bank of Richmond, Virginia. To this judgment of the circuit court, Boggs and Waters obtained a writ of error and supersedeas from one of the judges of this court."

In the course of the opinion delivered by Judge Staples, this is said:

"The prosecutions in the present case involve a proceeding both *in rem* and *in personam*. The offence is punished by confinement in the penitentiary and by the forfeiture of the property. The forfeiture is a part of the conviction and judgment, and is therefore of a criminal character. Such being the case, it is contrary to the bill of rights and to the principles of the social compact to confiscate the property

of a person not a party to the proceeding, without notice, without trial, and without affording him an opportunity of being heard in his defence. In *Fisher* v. *McGirr*, 1 Gray [(Mass.) 1] 36, [61 Am. Dec. 381], Chief-Justice Shaw, in commenting upon a statute of the State of Massachusetts confiscating intoxicating liquors kept in violation of law, said: 'Such being the character of the prosecution, in a high degree penal in its operations and consequences, it should be surrounded with all the safeguards necessary to the security of the innocent. The party should have notice of the charge of guilty purpose upon which his property is declared to be unlawfully held and in danger of being forfeited, a time and opportunity to prepare his defence, and an opportunity to meet the witnesses against him face to face.' And so speak all of the authorities. Some exceptions to this rule may be found in cases where grants are made by the State for the accomplishment of objects in which the public is interested and the law, in making the grant, provides for the forfeiture when the object is not accomplished, and also in cases where lands and other property are forfeited to the government for the non-payment of taxes by the owner. In these cases the owner is necessarily aware of his own delinquency, and provision is almost universally made allowing him time to redeem. With these exceptions, and perhaps a few others standing upon peculiar grounds, it is an inflexible principle of common right that no person can be legally divested of his property unless he is allowed a hearing before an impartial tribunal, where he may contest the claim asserted against him and be allowed an opportunity to meet it on the law and the facts.

"In judicial proceedings, says Judge Cooley, the law of the land requires a hearing before condemnation and judgment, before dispossession, etc. Forfeitures of rights and property cannot be adjudged by legislative act, and confiscation without a judicial hearing after due notice would be void as not being by due process of law. Cooley's Constitutional Limitation, 441, 450.

"In *Bradstreet* v. *Neptune Ins. Co.* [Fed. Cas. No. 1, 793], 3 Sumn. 601, Mr. Justice Story said: 'It is a rule founded on the first principles of justice that a party shall have an opportunity of being heard in his defence before his property is condemned, and that charges on which the condemnation is sought shall be specific, determinate and clear.' "

The statute under review, as we have observed, affords to the innocent owner no opportunity to be heard. In the language of the *Boggs Case*, "It requires no notice— personal or otherwise; it authorizes no proceeding * * * beyond the indictment against the offender; it makes no provision for any mode of trial * * * ."

It follows that the judgment of the lower court is erroneous and must be reversed, without prejudice to any right the Commonwealth may have to proceed in equity.

An order will be entered in this court restoring the property known as 109½ East Church Avenue to the plaintiffs in error.

*Reversed.*