STATE *ex rel.* STANLEY R. COX, JR.

*v.*

BURL H. TAFT

(No. 10881)

Submitted September 11, 1957. Decided October 29, 1957.

*Julius W. Singleton, Jr., M. G. Bufano,* for appellant.

*Stanley R. Cox, Jr.,* Prosecuting Attorney, *Oakley J. Hopkins,* Assistant Prosecuting Attorney, for appellee.

GIVEN, JUDGE:

Defendant, Burl H. Taft, complains of two orders entered by the Circuit Court of Monongalia County on January 4, 1957. By one of the orders defendant was adjudged to be in contempt of court, in having violated the provisions of an injunction previously awarded against him. By that order defendant was sentenced to serve six months in the county jail. The other order complained of required the Sheriff of Monongalia County to secure all entrances to, and to keep closed for one year, certain premises situated in Monongalia County, West Virginia, particularly described, known as the New Central Hotel.

By an order of January 18, 1954, the Circuit Court of Monongalia County awarded an injunction against certain individuals, not presently involved, enjoining and inhibiting them from conducting a nuisance at or on the premises mentioned above. Subsequently, and while the injunction order was in effect, defendant became the owner of the premises and, by an order entered January 13, 1955, the injunction was made effective as to him. By the last mentioned order, defendant was enjoined "from using, establishing or conducting upon said premises a common and public nuisance, as aforesaid, or knowingly permitting said premises to be used, established or conducted as a common and public nuisance, as aforesaid, as defined by the Statute aforesaid * * * ". Notice that defendant was enjoined from "knowingly" permitting the premises to be used as a nuisance.

On November 29, 1956, a petition was filed praying that a rule issue requiring defendant to show cause "why he

should not be adjudged in contempt of this Court for violating the provisions of the injunction order as aforesaid; that the continuing nuisance in the New Central Hotel * * * be abated"; and for general relief. The petition alleges that defendant "has knowingly permitted said premises to be used, established and conducted as a common and public nuisance in this, to-wit: that on the 8th day of October, 1956, one Naomi Bringham, alias Naomi Bingham, did possess for sale alcoholic liquor in said premises * * *". On the hearing, it was developed that on August 8, 1956, defendant leased that part of the premises used as a hotel, where the alleged violation of the liquor laws occurred, to John Molter. By provisions contained in the lease, the lessee agreed "that no person who has been under a court injunction for any illegal or unlawful act, shall be associated in any manner, as employee or otherwise, with said premises * * * that in case of any injunction for unlawful acts or any padlocking of said premises, due to illegal acts of said lessee, sub-tenant, sub-lessee or their employees, agents or guests, or due to any illegal business carried on in said premises, the said lessee, John Molter, agrees to continue to pay the aforesaid rental as aforesaid, or to release said premises or to pay said rental of $325.00 per month to said lessor as long as said injunction or padlocking is in force".

On October 8, 1956, John W. Lewis, chief of police of the City of Morgantown, entered the hotel, apparently in connection with an investigation of a complaint not involving the Bringham violation, and observed Naomi Bringham in the hotel "pouring this liquor out". In answer to a charge that she did unlawfully possess alcoholic liquors for sale, Naomi Bringham entered a plea of guilty and was fined one hundred dollars and costs.

The chief of police and George Gilot, a police officer of the City of Morgantown, the only witnesses who testified on behalf of the State, testified to the effect that the general reputation of the premises was that whiskey "is being sold" there. No attempt, other than the introduction of

evidence relating to the reputation of the premises, and, perhaps, the reputation of the lessee, was made to establish notice or knowledge on the part of defendant as to any unlawful act committed or business conducted at the premises. Defendant testified to the effect that he knew of no violation or unlawful act committed on the premises; that he had no personal knowledge as to the violation committed by Naomi Bringham; that he was not acquainted with her; that the provisions of the lease, quoted above, were inserted in the lease for the purpose of preventing any violation of law; that he was in the vicinity of the premises frequently; that he owned one "pinball machine" in the New Central Hotel, and visited the hotel about once each month; that he owned four "pinball machines" in the Flamingo Club, located on the first floor of the building wherein the New Central Hotel is situated, but not a part of the premises leased to John Molter; and that he is frequently at the Flamingo Club.

Code, 60-6-16, as amended, in so far as deemed pertinent, reads: "A place where alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished contrary to law shall be deemed a common and public nuisance * * * A person who shall maintain, or shall aid or abet or knowingly be associated with others in maintaining such common and public nuisance shall be guilty of a misdemeanor, and upon conviction thereof shall be punished * * * and judgment shall be given that such nuisance be abated or closed as a place for the manufacture, sale, storage, possession, giving away, or furnishing contrary to law of alcoholic liquor, as the court may determine * * *".

Code, 60-6-17, as amended, contains this provision: "The commission, its agents, the attorney general, the prosecuting attorney, or a citizen of the county or municipality where a nuisance as defined in section sixteen of this article is located, may maintain a suit in equity in the name of the State to abate and perpetually enjoin the same. Courts of equity shall have jurisdiction thereof * * *".

From the facts detailed, it clearly appears that defendant is not charged with having violated the provisions of the injunction order by "establishing or conducting" a public nuisance on the premises or with having personally violated any law relating to the sale of intoxicating liquor. Clearly, the charge rests solely on the allegation that defendant "knowingly permitted" the premises to be used in violation of the injunction order. As above noted, no evidence other than the general reputation evidence, above detailed, was adduced to establish any such knowledge on the part of defendant. Defendant vigorously contends that such evidence was inadmissible and improperly considered by the trial court, and that the whole evidence was insufficient to establish any violation of the injunction order by defendant.

In 20 Am. Jur., Evidence, § 462, it is stated: "The broad rule prevails that where particular knowledge of a fact is sought to be brought home to a party, evidence of the general reputation and belief of the existence of the fact among his neighbors is admissible as tending to show that he also had knowledge of the same matter * * *".

In 66 C. J. S., Nuisances, §166, in considering the admissibility of such evidence, it is categorically stated that "The general reputation of the place may be shown".

In *Young v. State*, 63 Okla. Cr. 196, 74 P. 2d 392, it is held: "3. Where one is tried for keeping a place in such manner as to constitute a public nuisance, its general 'reputation' as such may be shown * * *". See *State v. Navy*, 123 W. Va. 722, 17 S. E. 2d 626; *Devanney v. Hanson*, 60 W. Va. 3, 53 S. E. 603; *Myown Development Corp. v. Commonwealth*, 159 Va. 1004, 167 S. E. 374; *McNelis v. Commonwealth*, 171 Va. 471, 198 S. E. 493; *State v. Hendricks*, 15 Mont. 194, 39 P. 93, 48 Am. St. Rep. 666; *State v. Hull*, 18 R. I. 207, 26 A. 191, 20 L. R. A. 609; 17 Am. Jur., Disorderly Houses, § 19.

While some holdings to the contrary may be found, we are of the opinion that the evidence offered by the State

tending to establish the general reputation of the premises involved was properly admitted for the purpose of establishing "knowledge" on the part of defendant. The great weight of authority, we think, supports the holding.

In considering the sufficiency of the evidence to support the finding on which the orders complained of were founded, it must be kept in mind that defendant became the owner of the premises subsequent to the entry of the original injunction order, and that he, in so far as the record shows, had no connection whatever with the operation of the hotel business after the entry of the injunction order. It seems certain that the bad reputation of the premises, as established by the evidence adduced by the State, arose before defendant became the owner therof, though that evidence indicates that such reputation continued to the time of the trial of defendant. The only act alleged, or attempted to be established by evidence, constituting a violation of any law, or violation of the injunction order, by defendant, or any other person, was the unlawful possession for sale of alcoholic liquor by Naomi Bringham. No evidence adduced establishes, or even indicates, that Naomi Bringham was an employee of defendant, or his lessee, the operator of the hotel, at the time of the violation, or at any other time, or that defendant had any knowledge of the particular violation prior to the time the plea of guilty was entered.

It is contended by defendant, and rightly, that the proceeding in contempt is, in nature, a criminal proceeding, and that to sustain a finding of guilt, evidence must establish guilt of defendant beyond any reasonable doubt. "A trial for criminal contempt is a quasi criminal proceeding, and the rules of evidence in criminal trials apply thereto. In such trial the guilt of the accused must be proved beyond reasonable doubt." Point 2, Syllabus, *State ex rel. Continental Coal Company* v. *Van A. Bittner*, 102 W. Va. 677, 136 S. E. 202. See *State ex rel. Hoosier Engineering Co.* v. *Thornton*, 137 W. Va. 230, 72 S. E. 2d 203.

"In proceedings for criminal contempt or proceedings which are regarded as criminal in their nature, it is, as a rule, required that defendant's guilt be established beyond a reasonable doubt, and a mere preponderance of the evidence is insufficient." 17 C. J. S., Contempt, §84.

Measured by the applicable rule, it seems clear that the evidence adduced fails to establish any violation of the injunction order by defendant. The sole violation on which the charge against him was based was committed by a person not answerable to him as an agent, employee or otherwise and, in so far as the record indicates, not even answerable to the lessee of defendant or the persons in charge of the hotel premises. No evidence adduced tends to establish that defendant "knowingly permitted" the illegal possession of intoxicating liquor for sale by Naomi Bringham. Defendant can not be held guilty of contempt because of an act of which he had no knowledge, by a person not in some manner answerable to him, and over whom he exercised no degree of control. It may be noted that no contention is made, and that no proof was tendered, as to the existence of any collusion between defendant and any person connected with the operation of the hotel.

The question relating to the judgment of the trial court in directing the padlocking of the premises is approached differently. "A proceeding to abate a nuisance has been variously considered as personal and not real, as basically in rem although operating in personam, as both in personam and in rem, and as quasi in rem; and an action to abate a nuisance is civil in its nature. Injunction against a nuisance is a harsh and drastic remedy." 66 C. J. S., Nuisances, §109. In *State* v. *Navy*, 123 W. Va. 722, 17 S. E. 2d 626, such a proceeding was considered to be one in rem. See *McNelis* v. *Commonwealth*, 171 Va. 471, 198 S. E. 493. The weight of authority appears to be that in a proceeding to abate a nuisance the proof necessary to establish the existence of a nuisance need not be convincing beyond a reasonable doubt, but there is respectable authority to the effect that such proof must be "clear, convincing, and satis-

factory". 66 C. J. S., Nuisances, §127. Though such a proceeding be of the nature of one in rem, the owner of property sought to be forfeited, or padlocked, is entitled to notice and to a fair and impartial hearing. *McNelis* v. *Commonwealth, supra.*

Our examination of the evidence adduced leads us to the conclusion that the State has failed to carry the burden of proof as to any fact or circumstance necessarily, or by reasonable inference, connecting defendant with anything done on the premises involved, or in connection with the operation of the hotel business, justifying the padlocking of the premises. The only act or violation of law proved as having occurred on the premises, or in connection with the operation of the hotel, subsequent to the issuance of the injunction, is that of Naomi Bringham and, as pointed out above, in so far as the record here discloses, neither the defendant nor any person connected with the premises or the operation of the hotel is in any way responsible for that violation.

In reaching the conclusions stated, we have not overlooked the fact that defendant had knowledge of the general reputation of the place of business, according to the evidence adduced, but the fact remains that nothing is established by the evidence as having occurred, since the injunction was issued against defendant, which in any way is chargeable against him. Neither have we overlooked the contention of the State to the effect that the provisions contained in the lease of the premises to Molter, quoted above, indicate guilt on the part of defendant. The insertion of such provisions in the lease may as well have been for the purpose stated by defendant in his testimony as for any other purpose. Being so equivocal, it can not be given controlling effect against defendant.

As indicated by the conclusions reached, each of the judgments of the trial court must be reversed.

*Reversed.*