STATE OF WEST VIRGINIA

*v.*

LOUIS RODA

(No. 10919)

Submitted January 14, 1958. Decided April 8, 1958.

*Clifford, Jones & White,* for plaintiff in error.

*W. W. Barron,* Attorney General, *Giles D. H. Snyder,* Assistant Attorney General, for defendant in error.

BROWNING, JUDGE:

Defendant, Louis Roda, obtained a writ of error and supersedeas from this Court to a judgment of the Circuit Court of Harrison County refusing his petition for a writ of error and supersedeas to a judgment of the Criminal Court of Harrison County, of April 14, 1956, sentencing defendant to six months in jail and imposing a fine of $500.00 for the offense of unlawfully maintaining a common nuisance, to-wit, a certain place where alcoholic liquors were sold, et cetera, contrary to law.

Defendant was indicted by the grand jury attending the November term of the Criminal Court of Harrison County. The orders of that court show that, of the sixteen persons summoned to attend, only twelve appeared in answer to the summons. Pursuant to statutory provisions, four other persons were then selected by special jury commissioners appointed by the court. Defendant filed a plea in abatement to the indictment on the ground that the foreman of the grand jury was not one of the twelve persons originally summoned as grand jurors, but was one of the four subsequently selected, by special jury commissioners to complete the panel, alleging that such being contrary to law, the indictment is void. Defendant also filed a written motion for a bill of particulars. The State demurred to the defendant's plea in abatement, the demurrer was sustained, and, after argument, the motion for a bill of particulars was overruled, both of which rulings of the trial court are assigned as error in this Court.

The State's evidence consisted principally of the testimony of six police officers of the City of Clarksburg, West Virginia, and one member of the Department of Public Safety. The substance of their testimony is that: During the period December 1, 1954 to November, 1955, each had occasion, in the course of his duties, to be in the Glen Elk section of Clarksburg, in which the Home Hotel, alleged to be a common nuisance which the defendant is charged with maintaining, was located; de-

fendant was in the Home Hotel, sometimes continuously and sometimes at intervals, during the day and night; defendant was observed washing glasses, wiping the bar, and checking the cash register; the bartender of the Home Hotel was arrested for possession of whiskey for sale and defendant posted the required bond; on one occasion defendant entered the Home Hotel immediately prior to the entry of two police officers, proceeded to a booth in which a man was sitting with a glass of some beverage on the table, which was poured out or spilled when the officers came up, but which still retained the odor of whiskey when smelled by an officer; on two occasions defendant had complained to officers that they were "picking on" the place; and, the Home Hotel was frequented by types of people who drink intoxicating beverages. The State's witnesses also testified that the reputation of the Home Hotel as a place where intoxicating liquors could be obtained was bad.

The defendant introduced in evidence a lease of the Home Hotel, dated December 31, 1954, between James LaRosa, owner of the Home Hotel and father-in-law of defendant, and one Sam Sereno. The oral testimony in defendant's behalf may be summarized as follows: Defendant leased the Home Hotel from his father-in-law until December 31, 1954; at that time he, being behind in his rent, surrendered the lease and a new lease was executed to Sam Sereno; thereafter, defendant had no connection with the operation of the Home Hotel as such; defendant was then constituted as his father-in-law's agent to look after his properties, which included the Home Hotel and the adjoining building, both of which were heated by a common furnace located in the basement of the Home Hotel; defendant was necessarily in and around the Home Hotel frequently in connection with tending the furnace and overseeing the proper maintenance; the keys to the furnace room were kept behind, or in, the cash register on the bar and it was necessary to procure them in order for defendant to perform his duties; after tending the furnace defendant would wash his hands in a sink behind the bar; defendant otherwise denied washing glasses,

wiping the bar, or checking the register; defendant paid all of the utility bills, only one of which was in his name, the others being in the name of his father-in-law, and received and cashed checks from the telephone company as rental for the maintenance of a pay telephone booth on the premises, in his capacity as agent for his father-in-law; and, there were no intoxicating beverages sold or stored on the premises.

The State, in rebuttal, introduced evidence that the lessee in the lease, Sam Sereno, had not applied for and did not obtain the necessary state and city licenses until August, 1955; such licenses ordinarily expire on June 30, after which a penalty attaches for renewal; and, in the instant case, no penalty was required, but instead the license fees were prorated as for a new business.

The jury returned a verdict of guilty and, as heretofore mentioned, judgment was entered thereon, sentencing defendant to six months in jail and imposing a $500.00 fine. Errors assigned in this Court are as follows: (1) Sustaining the demurrer to the plea in abatement to the indictment; (2) overruling defendant's motion for a bill of particulars; (3) permitting the State to introduce evidence of the general bad reputation of the Home Hotel as to observance of liquor laws; (4) permitting evidence as to the type of persons frequenting the place; (5) overruling defendant's motion to direct a verdict; and (6) the giving of certain instructions on behalf of the State.

The first assignment requires an interpretation of Sections 3, 4 and 5 of Article 2, Chapter 52, of the Code. Section 3 provides for the selection and summoning of grand jurors, and Section 4 prescribes the manner of selecting additional grand jurors on the return day by special jury commissioners when one or more of those summoned fails to appear. Section 5 provides that: "From among the persons so summoned, who attend, the court shall select a foreman, * * *." The foreman of the grand jury which returned this indictment was one of the four additional grand jurors selected by special

jury commissioners. This Court holds that when these three sections are read together, it was the obvious intent of the Legislature that the language "the persons so summoned, who attend" in Section 5 should apply to all qualified jurors selected under the provisions of Sections 3 and 4.

The action of a trial court in refusing to grant a motion for a bill of particulars in a criminal case will not be reversed by this Court unless it is clear that the defendant has been prejudiced, since this is a matter within the sound discretion of such court. We find no abuse of discretion in this case. *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d. 553, 163 A. L. R. 1265.

The offense upon which the defendant was convicted was created by statute, Chapter 4, Section 16, Acts of the Legislature, Regular Session, 1935. The first sentence of the act provides: "A place where alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished contrary to law shall be deemed a common and public nuisance. * * *" Several police officers were permitted, over objection, to testify that they were familiar with the general reputation of the Home Hotel, with respect to observance of liquor laws of this State, and each stated that its reputation was bad. Upon examining the decisions of this Court, we find that, with reference to the maintenance of an alleged liquor nuisance, this Court has not decided whether such reputation evidence is admissible.

It is interesting to note that Code, 61-8-5, relating to the operation of a house of "ill fame" was, by Chapter 30, Acts of 1943, rewritten so that after the amendment the words "ill fame" did not appear in the section, but instead the words prostitution, lewdness, or assignation, are substituted therefore. Subsection (d) provides in part that: "In the trial of any person, charged with a violation of any of the provisions of this section, testimony concerning the *reputation* or *character* of any house, place, building, hotel, tourist camp, or other structure, and of the person or persons who reside in or frequent same,

and of the defendant or defendants, shall be admissible in evidence in support of the charge. * * *" (Italics supplied.) There is no similar provision relative to the admission of such testimony upon the charge of maintaining a liquor nuisance.

In 1 Wharton's Criminal Evidence, 12th Edition, Section 275, published in 1955, is this statement: "Where an alleged offense constitutes an offense only when it is attended by notoriety or a bad general reputation, the reputation of the offensive act is an essential element of the offense and is admissible in evidence. Thus, general reputation within the community as to the character of the defendant's acts is admissible when the defendant is prosecuted for maintaining a house of 'bad repute' or 'ill repute', or a house reputed to be a place of drinking, for living in 'notorious adultery,' or for being a common thief. * * *. If reputation is not an essential element of the offense, reputation of the character of the house maintained by the defendant is not admissible. Thus, on an indictment for maintaining a 'disorderly house' in which no reference is made to its reputation, it is necessary to show the nature of the acts committed therein, and reputation is not admissible. * * *" There are many cases cited in the footnotes in support thereof.

The question is discussed in 5 Wigmore on Evidence, Section 1620. In Subsection (3) Wigmore states: "The offense of being a common thief, or a common gambler, or other *common offender,* or of keeping a common nuisance, e. g. a place for *illegal sale of liquor* or *drugs,* is one which by some Courts, sometimes under statute, has been regarded as provable by reputation; but perhaps the notion here enters that reputation is a part of the issue. * * *" The exhaustive citation of authorities for this statement, beginning on Page 500, shows that where such evidence has been admitted, it has usually been pursuant to a statute similar to that heretofore quoted regarding houses of prostitution under the laws of this State. There are some exceptions, however, partic-

ularly several Oklahoma cases, where evidence of the reputation of a place where liquor is alleged to be sold, stored, et cetera, is admissible in the absence of a statute. The case of *State* v. *Peters*, 92 Montana 12, 231 Pac. 392, undoubtedly represents the great weight of authority upon this question in the absence of statutory provisions making such evidence admissible. In the opinion, the court said: "In a prosecution against a person for maintaining a liquor nuisance, and in the absence of a statute permitting evidence of the general reputation of the place where the nuisance is alleged to have existed, such evidence is inadmissible. Indeed, this is the well-nigh universal rule with respect to common nuisance in general, although there are some exceptions. * * *" For this statement, the writer of the opinion cites Wharton's Criminal Evidence, Greenleaf on Evidence, Elliott on Evidence and Corpus Juris, as well as cases from other jurisdictions.

It is the decision of this Court to follow the majority view, and to hold such evidence inadmissible. The admission of this testimony over objection was reversible error. The fact that this State has seen fit to make such evidence admissible upon a charge of maintaining a house of prostitution, and has not so provided with reference to a liquor nuisance, is persuasive.

Several witnesses for the State were also permitted to testify, over objection, that the Home Hotel was frequented by the "type" of people who drink intoxicating liquors. This statement quoted from 1 Wharton's Criminal Evidence, 12th Edition, Section 275, Page 619, apparently represents the majority view: "When the character of the defendant's house or place of operations is material, the public reputation of persons frequenting the place is admissible." Many cases are cited in Footnote 3 on Page 620 as supporting that statement.

In reviewing the authorities upon this and the preceding question, it will be found that many of the cases are based upon statute. There is some conflicting authority upon the question. There is, of course, a difference

between the testimony of a witness as to a matter which is within his knowledge, what he knows of some person or place by reputation, and his opinion based upon neither. The testimony of the witnesses in this case that persons of a certain "type" frequented the Home Hotel, without any further explanation, could be nothing more than opinion. It is true that there is some evidence in the record which is not limited to opinion, but has its basis in the knowledge of the person who testified. This Court holds that it was reversible error to admit testimony, over the objection of the defendant, as to the "type" of persons who frequented this establishment without any further identification, explanation or clarification. The case of *Commonwealth of Massachusetts* v. *John Bezko*, Mass., 182 N. E. 639, reported in 83 A. L. R. 1398, to which an annotation begins on Page 1401, is apparently in conflict with this holding. However, in the beginning of the annotation, this statement appears: "Little direct authority has been found in support of the decision in the reported case (Com. v. Bezko, ante, 1398) (which does not rely on any express statutory provision), * * *."

Since the judgments must be reversed for the reasons herein stated, it is unnecessary to discuss the other assignments of error.

The judgments of the Criminal and Circuit Courts of Harrison County are reversed, the verdict of the jury is set aside, and the defendant is granted a new trial.

> *Judgments reversed;*
> *verdict set aside;*
> *new trial granted.*

GIVEN, JUDGE, dissenting:

In the very recent case of *State* v. *Taft,* 143 W. Va. 106, 100 S. E. 2d 161, we held that evidence of general reputation of a premise was admissible in a proceeding to abate a nuisance, for the purpose of "establishing guilty knowledge on the part of the owner of the premises". It is significant, of course, that the holding was limited

to "guilty knowledge" of the owner. However, I am unable to conceive of any justifiable basis for the distinction seemingly attempted to be drawn from the facts in the instant case, necessitating a different result. The statute, quoted in the majority opinion, makes the "place where alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished contrary to law", a common and public nuisance. Therefore, the maintaining of such a "place" is the essential element of the violation and, even under the authorities quoted in the majority opinion, the reputation of the place where the offensive act was committed, "being an essential element of the offense", is clearly "admissible in evidence". An examination of the authorities cited in support of the texts quoted in the majority opinion will, I believe, leave no doubt that such reputation evidence of such a place is usually admitted.

The majority appears to find support in the existence of a statute, Code, 61-8-5, relating to the operation of houses of ill fame. That statute makes it a violation for "any person" to keep a place for certain purposes declared illegal, and the violation or the illegal act by the person must be proved. Without such a statute, the reputation of the person or place could not be admitted because of the general hearsay rule. Under the statute, the reputation of the "person or persons who reside in or frequent same", as well as of the "house, place, building, hotel, tourist camp, or other structure", is made admissible. But the fact that the statute makes such reputation evidence admissible in such a different situation does not bring me to the conclusion that the general rule as to the admissibility of reputation evidence as to a person should be extended to the reputation of a "place", especially where the character of the place is the essential element of the offense.

Being of the views indicated, I respectfully dissent.