JANE T. BOWLES

*v.*

IMO JEAN MITCHELL

(No. 12061)

Submitted April 18, 1961.  Decided June 27, 1961.

*Mahan, White, Higgins & Graney,* for plaintiff in error.

*Laird, Thrift & Hamilton, Pat R. Hamilton,* for defendant in error.

BROWNING, JUDGE:

Jane T. Bowles, plaintiff, instituted this action in the Circuit Court of Fayette County against the de-

fendant, Imo Jean Mitchell, for the alleged alienation by the defendant of the affections of plaintiff's husband, Wally Bowles. A judgment in favor of the plaintiff in the amount of $15,000.00 was entered by that court on January 21, 1960, to which this Court granted a writ of error on July 18, 1960.

Twenty-one assignments of error are made in this Court, foremost of which, inasmuch as a determination favorable to the plaintiff in error will require a reversal of the case and obviate any discussion of the other assignments, is that the trial court erred in entering "judgment" for the plaintiff "for the reason that there was no verdict of the jury recorded and made a part of the record by any order of the Court, or otherwise, no showing that the jury was properly impaneled or examined on its voir dire, or that said jury was duly sworn, and that there was no verdict of the jury in the record upon which the Court below could properly enter any judgment for plaintiff * * *."

The file in the case discloses: (1) The declaration; (2) a sheet of paper bearing the notation:

"We, the jury, find for the plaintiff, Jane T. Bowles, and against the defendant, Imo Jean Mitchell, and we assess plaintiff's damages at $25,000.00

"*Carl Smith,* Foreman."

(3) a sheet of paper bearing thereon the following:

"Jane T. Bowles
"v. Trespass in the Case
"Imo Jean Mitchell

"*Special Interrogatories*

"If the jury should find a verdict for the plaintiff in this case and assess damages, the following questions will be answered by the jury:

"1. How much of the damages has the jury allowed for compensatory damages, if any? $15,000.00.

"2. How much of the damages has the jury allowed for exemplary or punitive damages, if any? $10,-000.00";

(4) an affidavit by Alice Vance, Earl Vance, and Kathryn Vance to the effect that, after "the case had gone to the jury * * * and before the jury had returned its verdict, * * *" the jury returned to the courtroom for some unknown purpose, at which time one of counsel for the plaintiff engaged one of the jurors in conversation for several seconds, the jury returned to its room and "on the following day the verdict in the case of Jane T. Bowles v. Imo Jean Mitchell was returned."; (5) an affidavit by L. E. Bullion, the juror involved, explaining the incident as a request by him that the attorney call the juror's wife to inform her that he would be late in coming home, and in which he adds "that I joined with the other jurors in returning a verdict for the plaintiff in the amount of $25,000.00 * * *."; (6) an affidavit of Pat R. Hamilton, one of counsel for plaintiff, in which he advances the same explanation of the incident as the juror, Bullion, and categorically denies any misconduct; (7) a memorandum opinion by the trial judge in which he states: "I must, therefore, regard the verdict, insofar as the punitive damages are concerned as being excessive * * *"; (8) a remittitur by the plaintiff of the $10,000.00 awarded as punitive damages which recites: "Whereas, by the verdict of the jury in this cause rendered said jury found a verdict in favor of the plaintiff, Jane T. Bowles, and against the defendant, Imo Jean Mitchell, and assessed the plaintiff's damages at $25,000.00,; and, whereas, the jury aforesaid did in reply to special interrogatories propounded to it by the court in writing answer said interrogatories in writing by saying that the compensatory damages as found by them and by them allowed was $15,000.00 and that the exemplary or punitive damages found by them and by them allowed was $10,000.00 * * *."; and (9) the "judgment" of January 21, 1960, which reads as follows:

> "This cause came on this day to be further heard upon the proceedings heretofore had herein, including the motion of the defendant to set aside said verdict and to grant to her a new trial, and the

Court having heard the argument of counsel thereon and having maturely considered of the same is of the opinion that if the plaintiff grant to the defendant a remittitur and a release of so much of said verdict as was found and assessed by said jury to constitute punitive or exemplary damages as set forth in their findings in response to the special interrogatories submitted to the said jury, to-wit, in the sum of $10,-000.00, that the Court should thereupon overrule the motion of the defendant to set aside said verdict and should enter up judgment in favor of the plaintiff in the amount of $15,000.00 upon said verdict. The findings of the Court with relation thereto being set forth in the written opinion dated December 31, 1959, which same, upon motion of counsel, is hereto attached and made a part of the record in this case.

"Thereupon appeared the plaintiff, by counsel, and tendered and asked leave to file her remittitur and release of the punitive or exemplary damages assessed by the said jury in the sum of $10,000.00, which same is in writing and is ordered filed.

"This cause thereupon came on to be further heard upon all the proceedings heretofore had and orders entered herein, including the remittitur aforesaid, and the Court having now maturely considered of all the same is of the opinion that the motion to set aside said verdict should be overruled and the same is accordingly done, to which defendant, by counsel, objected and excepted. It is therefore considered by the Court that the plaintiff do recover of and from the defendant, Imo Jean Mitchell, the sum of $15,-000.00 with legal interest thereon from the date of said verdict until paid, together with her costs by her in this behalf expended and to the action of the Court as hereinbefore set forth in entering up judgment as aforesaid, the defendant, by counsel, objected and excepted.

"As to so much of said verdict as is represented by said release and remittitur, to-wit, the sum of $10,000.00, the defendant is acquitted and discharged."

It will thus be seen that there is no order of the court, as such, reciting the impaneling or swearing in of the jury, their return of a verdict or the court's acceptance of any such verdict. It will also be noted

that, of the papers hereinabove mentioned as contained in the file of the case, only the memorandum opinion of the trial court and the remittitur were by order filed and made a part of the record in the trial court. However, appellant, by her Bills of Exception, Nos. 1 and 3, respectively, made ''a part of the record'' in this Court the transcript of evidence and the affidavits of Alice, Earl and Kathryn Vance.

The Defendant's Bill of Exception No. 1, the transcript of evidence, contains as a preamble, prior to the introduction of witnesses, the following: ''BE IT REMEMBERED that upon the trial of this case, on the 16th day of October, 1959, that being one of the judicial days of the September term, 1959, of said Court, after a jury had been duly impaneled and sworn, the plaintiff, to maintain the issue joined upon her part, introduced the following evidence, * * *.''

In view of the Court's decision upon the controlling question, it is deemed unnecessary to recite the evidence or to discuss the other assignments of error.

As was stated in *State v. Underwood,* 130 W. Va. 166, 43 S. E. 2d 61: ''What is not disclosed by the records of courts of record does not legally exist.'' *Meyers v. Land Co.,* 107 W. Va. 632, 149 S. E. 819. The same principle was stated in *State ex rel. Bika v. Ashworth,* 128 W. Va. 1, 35 S. E. 2d 351, in this language: ''The circuit court, being a court of record, speaks only by its record, and what does not so appear does not exist in law.'' To properly assess these statements, it is necessary to understand what the word ''record'' means as used in these and the other cases cited in the opinions. The record before this Court and the record made in the trial court may not be identical. It is the record made in the trial court that is vital. The record before this Court shows that counsel for the defendant in error designated as pertinent in this case ''the entire record therein, including the evidence, instructions offered by the parties and given or refused by the Court, orders, etc., and

excluding only the process issued therein.'' The record before this Court further shows that counsel for the defendant in error concurred ''in the designation of the portion of the record as designated in the letter of Mr. Frank K. Mahan dated August 20, 1960.'' The certificate of the Clerk of the Circuit Court of Fayette County, West Virginia, showed that: ''The foregoing is a true transcript of the proceedings had in the law action of Jane T. Bowles, plaintiff, v. Imo Jean Mitchell, defendant, lately depending in said Circuit Court, as the same appears of record in my said office.''

The record before this Court shows that this action was instituted on July 21, 1959, the plaintiff's declaration was filed at August Rules, 1959, and the trial began on October 16, 1959, during the regular September, 1959, term of the Circuit Court of Fayette County. The record discloses no further pleading and no issue joined between the parties, but there is in the file a paper, as heretofore stated, purporting to be a jury verdict in the sum of $25,000.00 signed: ''Carl Smith, Foreman.'' There is another paper in the file purporting to be ''special interrogatories'' showing that the jury allowed for compensatory damages, $15,000.00, and for ''exemplary or punitive damages, if any'', $10,000.00. Thereafter appears an affidavit relating to alleged misconduct of one of the jurors with regard to a conversation with counsel for the plaintiff, dated November 4, 1959, and counter-affidavits denying misconduct, dated November 5, 1959 and November 7, 1959. Dated December 31, 1959, is a letter in the nature of an opinion by the Circuit Judge to counsel in the effect that if a remittitur of $10,000.00 be granted by the plaintiff covering the ''punitive damages assessed by the jury'' the court would enter a judgment for the amount of the compensatory damages found by the jury in the sum of $15,000.00. There is a writing, undated, by counsel for the plaintiff accepting these terms and remitting the amount assessed as punitive damages, and an

order entered of record on January 21, 1960, at a term of court subsequent to the term at which the alleged jury verdict was returned, in the language heretofore quoted verbatim.

Code, 56-6-11, provides that: "The Court, in an action at law, if neither party require a jury, or if the defendant has failed to appear and the plaintiff does not require a jury, shall ascertain the amount the plaintiff is entitled to recover in the action, if any, and render judgment accordingly. * * *" There is nothing in this record, and especially is there nothing in the alleged judgment of the Circuit Court of Fayette County, indicating that this section is applicable. Although not specifically relied upon in briefs or argument, we have looked carefully to Code, 58-1-2, entitled "Harmless Error", and sometimes known as the statute of jeofailes of this State, and it is quoted hereafter in full: "No judgment or decree shall be arrested or reversed for the appearance of either party, being under the age of twenty-one years, by attorney, if the verdict (where there is one), or the judgment or decree, be for him and not to his prejudice; or for want of warrant of attorney; or for the want of a similiter, or any misjoining of issue; or because it does not appear that an issue has been made up on matter alleged in any pleading when, without objection by any party, the case has been tried in the absence of such issue and it is apparent from the record and the evidence (a) that the trial was conducted as if an issue had been made upon such matter, or (b) that no evidence pertaining to such matter was offered and it is reasonably apparent that the parties have treated such matter as waived or abandoned; or for any informality in the entry of the judgment or decree by the clerk; or for the omission of the name of any juror; or because it may not appear that the verdict was rendered by the number of jurors required by law; or for any defect, imperfection, or omission in the pleadings, which could not be regarded on demurrer; or for any other defect, im-

perfection, or omission, which might have been taken advantage of on a demurrer or answer, but was not so taken advantage of." The purpose of this section, as last amended, Code, 1923, Chapter 134, Section 3, was to prevent the arresting or reversal of a judgment for lack of an issue. See 29 W. Va. Law Quarterly, 128.

Code, 56-4-49, as amended by Code, 1923, Chapter 125, Section 44, provides that: "If a defendant, who appears, fail to plead, answer or demur to the declaration or bill, a rule may be given him to plead. If he fail to appear at the rule day at which the process against him is returned executed, or when it is returnable to a term, at the first rule day after it is so returned, the plaintiff, if he has filed his declaration or bill, may have a conditional judgment or decree nisi as to such defendant. * * *. [At the next rules, if the defendant continue in default] * * * if it be at law, judgment shall be entered against him, with an order for the damages to be inquired into, when such inquiry is proper." The judgment before us does not bring the plaintiff within any of these statutory exceptions. Therefore, the judgment could only have been entered upon a jury verdict and the judgment shows not the prerequisites necessary for the entry of such a judgment. It does not show that "_____, and eleven other good and lawful men," were selected to try the issue or issues joined between the parties, that they were duly impanelled and sworn, that the jury after considering the evidence returned into court with a verdict for the plaintiff, or that such verdict was received and accepted by the trial judge. This Court with some reluctance finds that the failure of the record of the trial court to show these essential facts as a prerequisite to the entry of judgment upon an alleged jury verdict is fatal since the record clearly shows that there was no waiver of a jury trial (See Article III, § 13, Constitution.) and no failure of the defendant to appear and defend the action in the manner provided by the statutes heretofore quoted.

We have carefully considered the well established principle stated in many decisions of this Court to the effect that there is always a presumption of regularity in all judicial proceedings and error therein must be affirmatively shown by him who asserts it. In the recent case of *Rollins v. Daraban,* 145 W. Va. 178, 113 S. E. 2d 369, the Third Syllabus Point is a quotation of the Fourteenth Syllabus Point of *Richardson v. Donehoo, et al.,* 16 W. Va. 685, and reads: "An Appellate Court will not reverse the judgment or decree of an inferior court, unless error affirmatively appear on the face of the record; and such error will not be presumed, all the presumptions being in favor of the judgment or decree." Many decisions of this Court to that effect are quoted in the opinion of that case and they will not be re-cited here. The principle is applicable to criminal as well as civil cases. *State ex rel. Lovejoy v. Skeen,* 138 W. Va. 901, 78 S. E. 2d 226. That was a habeas corpus proceeding in which it was held that a collateral attack was being made upon the judgment of the circuit court by which the relator had been sentenced to the penitentiary for life upon conviction of a felony and the filing of an information alleging that the prisoner had twice before been convicted of a felony in the United States. The Court said: "A judgment pronounced by a court of competent jurisdiction, valid on its face, will not be disturbed on a writ of habeas corpus, a collateral attack, but the petitioner is left to his remedy by a writ of error." *State v. Arthur,* 142 W. Va. 737, 98 S. E. 2d 418, is to the same effect and contains extensive citation of authority upon that particular question. However, the real question before this Court in this case is not the validity or the invalidity of a judgment, but the question of whether such a judgment was ever entered by the trial court. Perhaps we could presume that a valid judgment was entered at the September Term of the Circuit Court of Fayette County and that the order of January 21, 1960, showing the remittitur and the refusal of the trial court to set aside the verdict of the jury, reiterated or re-

peated the necessary allegations of a previous order or judgment, except for the fact that the record in the trial court affirmatively shows that no such previous order was entered by the Judge of that court. The record before this Court affirmatively shows that there is before it all of the proceedings had in the trial court including all orders with the exception that we have not before us a copy of the summons. Thus, the presumption is positively rebutted in this case and the decisions of this Court upon that question to which reference has been made are not applicable. In the recent original proceeding in prohibition of *State ex rel. Black v. Pennybacker, Special Judge,* 144 W. Va. 612, 110 S. E. 2d 265, the relator prayed for a writ to prevent the enforcement of a judgment, alleged to be void because the respondent, Special Judge, had not been selected in the manner provided by law. The writ was awarded since ''it appears affirmatively that the special judge has not been lawfully selected.'' In the opinion the Court, citing authority, said: ''In the absence of such affirmative showing from the record, it will be presumed that the statutory requirements were followed, and that he was lawfully elected or selected. On the other hand, where it appears affirmatively from the record that the special judge was not legally elected or selected, the question, being jurisdictional, may be raised for the first time in this Court. This appears to accord with the general rule in other jurisdictions. * * *. It also accords with the general rule in all situations that the presumption in favor of jurisdiction of a court of general jurisdiction does not obtain when the record discloses an absence of jurisdiction. * * *. In the case presently being considered, however, all of the orders entered in the circuit court are exhibited with the petition, and from such record it appears affirmatively that there was no compliance with statutory requirements relating to the election of a special judge.''

The order of the Circuit Court of Fayette County of January 21, 1960, insofar as it purports to enter

judgment in favor of the plaintiff in the sum of $15,000.00, is reversed and this case is remanded to the Circuit Court of Fayette County for a new trial.

*Judgment reversed;*
*new trial granted.*