STATE *ex rel.* BEVERLY ANN MCCARTNEY, *et al.*

*v.*

JACK R. NUZUM, *Judge, etc., et al.*

(Nos. 14220, 14221)

Decided June 30, 1978.

*William W. Talbott, Talbott & Alsop*, for relators.

*James A. Kent, Jr.*, for respondents.

MILLER, JUSTICE:

Petitioners Beverly Ann McCartney and Clyde L. Howell, the natural mother and father of Nadine McCartney, invoke the original jurisdiction of this Court in prohibition and mandamus to prevent the respondent circuit judge from proceeding to hear a child neglect petition and to require him to transfer custody of Nadine to the mother, Mrs. McCartney. We award the writs.

This case is a sequel to the case of *McCartney v. Coberly*, ____ W.Va.____, ____ S.E.2d ____ (1978) (No. 14042), in which we held that Mrs. McCartney was entitled to the custody of her daughter, Nadine, because she had placed her only in the temporary custody of the Coberlys.

After the decision was handed down, the Coberlys filed a child neglect petition against the natural parents in the Circuit Court of Randolph County under the provisions of W.Va. Code, 49-6-1, *et seq.*, claiming the child is neglected and abused as these terms are used in W.Va. Code, 49-1-3.[1]

_____

[1] W.Va. Code, 49-1-3, states:

" 'Abused child' means a child:

"Whose parent, guardian or custodian inflicts or attempts to inflict or allows to be inflicted as a result of inadequate supervision, physical injury or substantial emotional injury upon the child which endangers the present physical or mental health of such child or inflicts, attempts to inflict, or knowingly allows to be inflicted sexual abuse upon the child.

" 'Neglected child' means a child:

"(1) Whose physical or mental condition is impaired or endangered as a result of the present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education and the condition is not due primarily to the lack of financial means of the parent, guardian or custodian; or

"(2) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappear-

In regard to the prohibition, the natural parents contend that the child neglect petition demonstrates on its face that the trial court is without jurisdiction to hear the matter, in that the facts alleged do not constitute "abuse" or "neglect" as those terms are defined in W.Va. Code, 49-1-3.

The neglect petition recites that the Coberlys have had custody of the infant child since February, 1975. It asserts that the child has become psychologically dependent on the Coberlys and that a removal of the child from their custody will result in severe mental and psychological injury to her. Documenting this claim, they attach a medical report from Dr. John F. Kelley, a child psychiatrist at the West Virginia University Medical Center.

Dr. Kelley states that he has seen the child on eight occasions and is of the view that she is attached to her foster parents and that a severance of this bond "would be reacted to by the child with emotional distress and a setback of ongoing development." He equates this severance with that experienced by a child "faced with the loss from death of natural parents."

The critical legal thrust of the neglect petition is that the natural mother, by threatening and attempting the removal of the child, will cause mental and psychological damage to the child, which in turn constitutes neglect and abuse. The precise statement in the neglect petition on this point is:

> "Respondents [the natural parents] are threatening and attempting to remove custody of Nadine McCartney from the petitioners [the Coberlys] and such removal or threatened removal will

ance or absence of the child's parent or custodian.

" 'Neglected child' does not mean a child:

"(1) Whose parent, guardian or custodian has failed to provide him with medical care because such medical care conflicts with the tenets and practices of a recognized or religious denomination or order of which such parent, guardian or custodian is an adherent or member; or

"(2) Whose education is conducted within the provisions of section one [§ 18-8-1], article eight, chapter eighteen of this Code."

result in serious mental and physical injury to Nadine as a result of the loss of her psychological parents as is more particularly explained in · the affidavit of Dr. John Kelley which is attached hereto as Exhibit A and included herein by reference."

The legal issue thus framed in the neglect petition was whether:

"[T]he threat to transfer custody or the actual transfer of custody would constitute neglect and abuse within the meaning of the statute."

It is important to note that the attempt on the part of the natural mother to regain custody of her child began less than a week after she had given custody to the Coberlys. It was not until this Court's opinion in *McCartney v. Coberly, supra,* rendered on March 14, 1978, that her right to the custody was finally resolved. Thus, her move to obtain her child is sanctioned by a prior opinion of this Court.[2]

We do not read W.Va. Code, 49-1-3, as applying to the case at hand. This statute, in defining an "abused" and "neglected" child, is premised on the concept that the person who has the actual custody of a child either directly abuses or neglects the child, or allows the same to occur indirectly as a result of inadequate supervision. Here, the natural mother never had the actual custody of the child, since custody was with the Coberlys during the entire period that the issue was litigated.

The psychological damage occasioned by the return of the child to her natural mother results from a judicial determination that the mother is entitled to her child. We do not doubt that the child has grown attached to her foster parents, but it would be a perverse and self-contradictory rule that would permit the natural parent

---

[2] As we noted in our earlier opinion, *McCartney v. Coberly,* ____W. Va. at ____, ____ S.E.2d at ____, n. 2, the right of Nadine's natural father, who was divorced from her mother, was not in issue on appeal. He has joined in these original proceedings seeking to confirm Mrs. McCartney's right to her daughter. We, therefore, discuss only her right as against that of the Coberlys.

to recover custody of her child, but then deny her the custody on the basis that it would be psychologically damaging.[3]

The threshold issue of the right to custody was decided in the earlier case of *McCartney v. Coberly, supra.* We find that the concepts of "abused" and "neglected" under W.Va. Code, 49-1-3, do not apply to the situation of the natural mother in this case because she did not have the actual custody of her child, and the alleged act of "psychological abuse" was occasioned by her attempt to obtain lawful custody of her child under a court order.

A writ of prohibition will lie where the trial court does not have jurisdiction or, having jurisdiction, exceeds its legitimate powers. W.Va. Code, 53-1-1; *State ex rel. West Virginia Truck Stops, Inc. v. McHugh,* ___ W.Va. ___, 233 S.E.2d 729 (1977); *State ex rel. Lynn v. Eddy,* 152 W.Va. 345, 163 S.E.2d 472 (1968); *State ex rel. Scott v. Taylor,* 152 W.Va. 151, 160 S.E.2d 146 (1968).

In the ninth syllabus of *Lynn, supra,* Judge Haymond, speaking for a unanimous Court, stated:

> "Although the court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power."

In *Scott, supra,* the trial court misconstrued a joint stipulation filed by the parties in a civil action and by order, over objection of the plaintiffs, reduced the amount of the *ad damnum* clause. This Court awarded prohibition on the basis that the trial court had clearly exceeded its legitimate powers.

---

[3] We do not mean to imply that in certain instances psychological testimony would not be relevant in aiding the determination of who should have custody of a child. *See generally* Okpaku, *Psychology: Impediment or Aid in Child Custody Cases?*, 29 Rutgers L. Rev. 1117 (1976). We simply conclude that such testimony here is inappropriate because the natural mother has not had the opportunity—guaranteed her by our prior *McCartney* decision—to attempt to raise her child.

In *Jennings v. McDougle*, 83 W.Va. 186, 98 S.E. 162 (1919), this Court awarded a prohibition to prevent further prosecution of a divorce action where essential jurisdictional facts were lacking on the face of the bill for divorce. The Court relied heavily on its earlier opinion in *City of Charleston v. Littlepage*, 73 W.Va. 156, 80 S.E. 131 (1913), in which it had concluded that prohibition was appropriate to bar an injunction suit upon a bill that failed to contain allegations essential to give the court jurisdiction for an injunction.

Here, the trial court acted in excess of its powers when it ordered a hearing on the petition for neglect. The neglect petition brought under W.Va. Code, 49-6-1, of necessity has to show facts which constitute an "abused" or "neglected" child as these terms are defined in W.Va. Code, 49-1-3. As we have previously observed, the facts in the petition do not come within the provisions of W.Va. Code, 49-1-3.

Once it is determined that the trial court has exceeded its legitimate powers in proceeding to hear the neglect petition, prohibition becomes appropriate to bar further prosecution of that action on the factual basis on which it was brought.[4]

The writ of mandamus was sought on the theory that the Circuit Court had misconceived the import of our prior opinion in *McCartney v. Coberly, supra,* and had failed to order transfer of the custody of the child to the natural mother. It is firmly established that mandamus will lie to compel a trial court to comply with the mandate of an appellate court. 52 Am Jur. 2d *Mandamus* § 355. In *State ex rel. Emery v. Rodgers*, 138 W.Va. 562, 76 S.E.2d 690 (1953), the Court discussed this principle at some length:

---

[4] It is, of course, possible that a natural parent who by court order obtains custody of his child may at some later time be subject to having the custody terminated if the parent neglects or abuses the child under the provisions of W.Va. Code, 49-1-3, *et seq.* Here, the parent has lacked the actual custody to provide a basis for a petition under this statute.

"Mandamus is an appropriate remedy to compel the Judge of a Circuit Court or other Court of record to comply with a mandate of this Court. *Koonce v. Doolittle,* 48 W.Va. 592, 37 S.E. 644; *King v. Mason, Judge,* 60 W.Va. 607, 611, 56 S.E. 377; *French v. Bennett,* 69 W.Va. 653, 72 S.E. 746. 'It is proper for this court, on application for a writ of mandamus, to construe its own mandate in connection with its opinion; and if it finds that the circuit court has erred, or acted beyond its province, in construing the mandate and opinion, to correct the mistake now and here, and to do so by writ of mandamus.' [*State ex rel.*] *Boswell v. Haymond, Judge,* 84 W.Va. 687, 100 S.E. 493. A decision of this Court on appeal may not be limited or restricted in any manner whatsoever by a trial court and this Court, by mandamus, may compel the entry of the decision made on appeal or writ of error, as a decision of the court from which the appeal or writ of error has been prosecuted. *Baier v. Alexander,* 119 W. Va. 716, 196 S.E. 17." [138 W.Va. at 566-567, 76 S.E.2d at 693-694.]

In order that there be no further misunderstanding of the opinion and mandate in the case of *McCartney v. Coberly, supra,* a writ of mandamus is issued directing the Circuit Court of Randolph County to transfer custody of the infant, Nadine McCartney, to her mother, Beverly Ann McCartney.

Accordingly, writs of prohibition and mandamus are awarded in conformity with this opinion.

*Writs awarded.*

McGRAW, JUSTICE, *dissenting:*

I read W.Va. Code § 49-1-3 as providing a basis for the filing of the Coberly petition. The petition alleges:

Respondents [the natural parents] are threatening and attempting to remove custody of Nadine McCartney from the petitioners [the Coberlys] and such removal or threatened removal will result in serious mental and physical injury to Nadine as a result of the loss of her psychologi-

cal parents as is more particularly explained in the affidavit of Dr. John Kelley which is attached hereto as Exhibit A and included herein by reference.

The evidence supporting the petition offered by a child psychiatrist went, in part, to the power that severing of Nadine McCartney from her foster parents "would be reacted to by the child with emotional distress and a setback of ongoing development" and that the reaction of the child to this severence would be that of a child "faced with the loss from death of natural parents."

The interpretation of the statute subscribed to by the majority could create a circumstance where a child would have to be the actual victim of abuse or neglect before a court would have jurisdiction to act. I believe the statute clearly protects children not only from immediate abuse and neglect but also from forseeable abuse or neglect. The fact that a biological parent had not had custody should not preclude an abuse or neglect hearing, if the natural forseeable consequence of that parent's custody over the child would be abuse or neglect.