342 S.E.2d 96

**STATE ex rel. UMWA
INTERNATIONAL
UNION**

v.

**Hon. Elliott R. MAYNARD, Judge
Circuit Court of Mingo
County, et al.**

No. 16682.

Supreme Court of Appeals of
West Virginia.

Oct. 16, 1985.

Dissenting Opinion Dec. 19, 1985.

Concurring Opinion March 12, 1986.

**132**

James B. McIntyre, James M. Haviland, Gary A. Collias, McIntyre, Haviland & Jordan, Charleston, Larry Harless, Morgantown, Bradley J. Pyles, Logan, for appellant.

Forrest A. Roles, Smith, Heenan, Althen & Zanolli, Charleston, Howard Persinger,

Williamson, Bradley J. Pyles, Logan, for appellees.

MILLER, Chief Justice:

This case presents the question of whether a fine of $200,000 imposed by virtue of a prior order setting a prospective fine of $10,000 for each future violation of the circuit court's order was beyond the jurisdiction of the circuit court.

In the proceedings below, the Circuit Court of Mingo County issued a preliminary injunction on January 3, 1985, to limit picketing and other activities of the United Mine Workers of America (UMWA) and other union defendants involved in a labor dispute with Sprouse Creek Processing Company and Rocky Hollow Coal Company.[1] This labor dispute arose at the expiration of the collective bargaining agreement between the UMWA and the respondent employers.

Soon after the preliminary injunction order was issued, the respondent employers filed a motion to have the UMWA and other union defendants adjudged in contempt. This motion was heard on January 30 and 31, 1985. On January 31, 1985, the court entered an order finding the UMWA in contempt and stating that a "prospective fine of Ten Thousand Dollars ($10,000.00) per future violation be imposed upon the United Mine Workers of America, to be paid by it into this Court if it be upon notice and hearing, hereafter found to have violated an order of this Court in this case."

Subsequently, on February 16, 1985, the respondent employers filed a motion to have the UMWA found in contempt and hearings were held in response to this motion beginning March 22 and ending March 27, 1985. Thereafter, the court determined that the UMWA was in violation of the court's January 31, 1985 order on February 18, 19, 20, 21, 22, 25, 26, 27, 28, and March 1, 4, 5, 6, 7, 8, 11, 12, 13, 14, and 15, and, in

---

1. The circuit court permitted Dan Hamilton d/b/a Hamilton Fencing Company and Larry Dotson d/b/a Midway Construction to join with the two coal companies seeking the preliminary injunction. For a related case involving this same labor dispute, see *Trumka v. Clerk of the Circuit Court,* 175 W.Va. 371, 332 S.E.2d 826 (1985).

accordance with the prospective fine previously set, imposed a $200,000 fine for those twenty days of violation, which fine was payable to the State of West Virginia.[2]

## I.

The fact that the UMWA has sought to challenge the underlying jurisdictional basis of the lower court's order with a writ of prohibition rather than by appeal is not legally foreclosed. We recognized the duality of the two remedies in *Hinkle v. Bauer Lumber & Home Building Center, Inc.*, 158 W.Va. 492, 495, 211 S.E.2d 705, 707 (1975): "A trial court may be reversed on appeal, as well as prohibited, when it exceeds its lawful jurisdiction. *Bowles v. Mitchell*, 146 W.Va. 474, 120 S.E.2d 697 (1961)."

■ We have traditionally couched the right to bring prohibition in the language of W.Va.Code, 53-1-1, which states that a writ of prohibition "shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." *See, e.g.,* Syllabus Point 3, *State ex rel. McCartney v. Nuzum*, 161 W.Va. 740, 248 S.E.2d 318 (1978); Syllabus Point 5, *State ex rel. Smith v. Bosworth*, 145 W.Va. 753, 117 S.E.2d 610 (1960).

In several cases we have permitted parties to utilize an original writ of prohibition in this Court to challenge the validity of a final order of a circuit court on a claim that the court had acted beyond its legitimate powers. In *Rakes v. Ferguson*, 147 W.Va. 660, 130 S.E.2d 102 (1963), we issued a writ of prohibition where the judge had refused to permit interest to run on a judgment in violation of W.Va.Code, 56-6-31.

Earlier in *Thacker v. Ferguson*, 127 W.Va. 177, 32 S.E.2d 47 (1944), while acknowledging that the matter could have been corrected on appeal, we issued a prohibition against the entry of an order that awarded attorney's fees to a wife in order to prosecute the appeal.

Similarly, prohibition was permitted in *State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 239 S.E.2d 660 (1977), where the court had granted probation in violation of the provisions of W.Va.Code, 62-12-2.

■ We have also recognized that where the prohibition seeks to correct an abuse of power rather than going to the issue of the lower court's jurisdiction, inquiry into the efficacy of an appeal is proper along with other matters, as we stated in Syllabus Point 2 of *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973):

"Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's

---

**2.** From a procedural standpoint, we note a significant issue not directly raised in this petition for a writ of prohibition. The motion or affidavit for contempt filed by the respondent employers on February 16, 1985, which ultimately led to the imposition of the $200,000 fine, listed only February 12, 1985, as the date the UMWA violated the court's order. Despite the fact that the UMWA was given notice of only this one day of violation, it is clear from the court's subsequent order that all of the violations for which the UMWA was charged occurred after February 12, 1985, with the first day of violation occurring on February 18, 1985.

This Court has consistently held that in any contempt case, whether it be civil or criminal, the parties charged with contempt must be given notice of the particular acts that allegedly were in violation of a court's order. *In re Yoho*, 171 W.Va. 625, 629–630, 301 S.E.2d 581, 586 (1983); *State ex rel. Koppers Co. v. International Union of Oil, Chemical & Atomic Workers*, 171 W.Va. 290, 292–293, 298 S.E.2d 827, 829 (1982); Syllabus, *Doctors Memorial Hospital, Inc. v. Woodruff*, 165 W.Va. 324, 267 S.E.2d 620 (1980); Syllabus Point 2, *State ex rel. Hoosier Eng'g Co. v. Thornton*, 137 W.Va. 230, 72 S.E.2d 203 (1952). Since the UMWA was only given notice of a violation occurring on February 12, 1985, it should only have been tried for contempt for its activities on that date. Any acts occurring after the filing of the respondent employers' motion were not properly the subject of a contempt

rights as to make a remedy by appeal inadequate, will a writ of prohibition issue."

*See also State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d 851 (1980).

■ In the present case, the claim is made that the circuit court lacked authority to impose the fine and, therefore, prohibition is proper to test this issue.

## II.

Before addressing the specific issue raised in the present case, it is useful to review the law of contempt that has developed in this State. Our procedural law surrounding contempt proceedings, whether civil or criminal, has always been rather stringent in an attempt to fully protect the rights of alleged contemnors. In *State ex rel. Arnold v. Conley,* 151 W.Va. 584, 587, 153 S.E.2d 681, 683 (1966), *overruled on other grounds, State ex rel. Koppers Co. v. International Union of Oil, Chemical & Atomic Workers,* 171 W.Va. 290, 298 S.E.2d 827 (1982), we said: " 'Whether the proceedings are civil or criminal, a contempt of court is in the nature of a criminal offense, and the proceeding for its punishment is criminal in its character, and the rules of evidence governing criminal trials are applicable.' "

In *State ex rel. Hoosier Eng'g Co. v. Thornton,* 137 W.Va. 230, 239, 72 S.E.2d 203, 208 (1952), we reiterated our rule regarding the sufficiency of an affidavit for contempt:

"In *State [ex rel. Ben Franklin Coal Co.] v. Lewis,* 113 W.Va. 529, 168 S.E. 812 [ (1933) ], this Court stated: '* * * And, since a prosecution for contempt is in the nature of a prosecution for a crime, such affidavit or information should state the acts constituting the offense with as great certainty as is required in criminal proceedings.' ... In *State [ex rel. Mineral State Coal Co.] v.*

*Komar,* 113 W.Va. 526, 168 S.E. 810 [ (1933) ], this Court held: 'To support an adjudication of contempt the information or affidavit, upon which the rule is issued, must show on its face facts sufficient to constitute the offense.' " (Citations omitted).

Furthermore, we have traditionally held that proof in a criminal contempt proceeding must be beyond a reasonable doubt, as stated in Syllabus Point 2 of *State ex rel. Cox v. Taft,* 143 W.Va. 106, 100 S.E.2d 161 (1957):

" 'A trial for criminal contempt is a quasi criminal proceeding, and the rules of evidence in criminal trials apply thereto. In such trial the guilt of the accused must be proved beyond reasonable doubt.' Point 2, Syllabus, *State ex rel. Continental Coal Co. v. Bittner,* 102 W.Va. 677 [136 S.E. 202, 49 A.L.R. 968 (1926) ]."

Because of the nature of a contempt proceeding, we also held in *Smoot v. Dingess,* 160 W.Va. 558, 560, 236 S.E.2d 468, 471 (1977), that: "Regardless of whether a contempt proceeding is civil or criminal, a defendant has the right to be represented by counsel, and if he is indigent counsel must be appointed to represent him. *Eastern Associated Coal Corp. v. Doe,* [159 W.Va. 200] 220 S.E.2d 672 (1975)." [3]

The right to have a jury trial in a criminal contempt proceeding under Article III, Section 14 of the West Virginia Constitution was recognized in *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90 (1980). We held in Syllabus Point 1, in part, of *Hendershot* that the right to a jury trial arises when a criminal contemnor is given a fixed jail sentence with no opportunity to secure his "immediate release by purging himself of contempt by doing an act which is within his power to accomplish."

*Hendershot* involved an indirect criminal contempt, which means that the acts consti-

---

action based upon the initial motion for contempt.

**3.** In Syllabus Points 2 and 3 of *Smoot,* these additional procedural standards are stated:

"2. Whenever a person is incarcerated for civil contempt, he must have an opportunity to appeal the proceedings by which he was so incarcerated, and as an effective appeal can

be prosecuted only upon an adequate transcript, a court reporter must be available and a stenographic record of civil contempt proceedings must be made.

"3. Where an indigent is incarcerated for civil contempt and is unable to afford the cost of a transcript for appeal, it is the obligation of the State to provide him with one."

tuting a violation of a court's order were not committed in the presence of the court. As we stated in note 9 of *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 669, 276 S.E.2d 812, 817–18 (1981), there are less procedural safeguards where the contempt is direct, that is, when it occurs directly in the presence of the court because in this situation, the judge must act promptly to control order in the courtroom. *See State v. Boyd,* 166 W.Va. 690, 276 S.E.2d 829 (1981).

Finally, in Syllabus Point 1 of *State ex rel. Koppers Co. v. International Union of Oil, Chemical & Atomic Workers,* 171 W.Va. 290, 298 S.E.2d 827 (1982), we held that "[i]ndirect criminal contemnors are entitled to the same rights as criminal defendants, including a right to be prosecuted by a state's attorney." In an earlier decision, *State ex rel. Walker v. Giardina,* 170 W.Va. 483, 294 S.E.2d 900, 36 A.L.R.4th 964 (1982), we held that where an indirect criminal contempt has been committed in violation of an order of this Court, the prosecuting attorney of Kanawha County is the appropriate official to initiate criminal contempt charges in the Circuit Court of Kanawha County.

### III.

█ Both parties place a great deal of reliance on *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981), where we discussed in some detail the distinctions between civil and criminal contempt. We stated in Syllabus Point 1 of *Robinson* that the purpose and type of sanctions imposed are determinative of whether the contempt was civil or criminal:

> "Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate."

We went on to state in *Robinson* that where the purpose served by the sanction "is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action," then the proceeding is a civil contempt. *Robinson,* 166 W.Va. at 670, 276 S.E.2d at 818. If the purpose served by the sanction "is to punish the contemner for an affront to the dignity or authority of the court, or to preserve or restore order in the court," the contempt is criminal. *Robinson,* 166 W.Va. at 670, 276 S.E.2d at 818.

We proceeded to illustrate in *Robinson,* 166 W.Va. at 670, 276 S.E.2d at 818, the different sanctions that mark the distinction between civil and criminal contempt:

> "The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, *see Gompers* [*v. Buck's Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)]; *Hendershot* [*v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90 (1980)], or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order....
>
> "... The appropriate sanction in a criminal contempt case is an order sentencing the contemner to a definite term of imprisonment or an order requiring the contemner to pay a fine in a determined amount." (Citations omitted).

█ When tested by the guidelines set out in *Robinson,* we conclude that the action in this case was one for criminal contempt. First, the $200,000 penalty imposed by the lower court was payable to the State of West Virginia and not to the aggrieved employers. We spoke to this issue in Syllabus Point 10, in part, of *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 220 S.E.2d 672 (1975), where we said:

> "[W]hen a party is required to pay a fine to the State in order to purge himself of contempt the imposition of such fine makes the action one for criminal contempt."

Second, the amount of the fine was not based on any damages actually incurred by the respondent employers as a result of the violations of the court's order. It was an arbitrary amount selected by the court to enforce its order. It was not as we stated in *Robinson*, 166 W.Va. at 670, 276 S.E.2d at 818, "an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order," which is one of the hallmarks of a civil contempt fine.

The fact that the lower court initially heard a motion for contempt and set a prospective fine for future violations of the court's preliminary injunction order does not alter the basic rules contained in *Robinson* and our earlier cases with regard to determining whether the proceeding is civil or criminal nor do the parties contend otherwise.[4]

■ We have not found many state court decisions discussing the use of a prospective fine in a criminal contempt case. New York has authorized the use of prospective fines in criminal contempt cases by statute. *In Matter of Rubin*, 100 A.D.2d 850, 474 N.Y.S.2d 94 (1984). Iowa has held that since it has no statute granting courts the authority to impose prospective fines in contempt cases, prospective fines are invalid. *Wilson v. Fenton*, 312 N.W.2d 524 (Iowa 1981). The Vermont Supreme Court in *State v. Pownal Tanning Co.*, 142 Vt. 601, 606, 459 A.2d 989, 992 (1983), in rejecting the use of prospective fines in a civil contempt case, compared such fines with forfeitures, which are not favored:

"A purely prospective fine can be defined as a purgeable penalty imposed on a contemnor who is currently in compliance with the underlying court order.

As such, it is similar to a forfeiture clause. Forfeiture clauses are not favored by this Court, *Cushman v. Outwater*, 121 Vt. 426, 433, 159 A.2d 89, 94 (1960), and thus prospective fines should likewise be disfavored."[5]

In a somewhat analogous situation, we held in *Gant v. Gant*, 174 W.Va. 740, 329 S.E.2d 106 (1985), that a circuit court was without jurisdiction to impose a one-per-cent-per-day penalty in a contempt proceeding against a husband. The husband had been ordered to pay temporary support and was found to be in arrears in the amount of $11,307.51. The court then ordered the one-percent-per-day penalty on the outstanding amount until it was paid. We found the penalty to be in the nature of a criminal contempt because its purpose was "to exact a penalty for willful, deliberate, and contumacious disobedience of a court's order," 174 W.Va. at 751, 329 S.E.2d at 118, and concluded in Syllabus Point 4: "A circuit court does not have authority to place a one-percent-per-day penalty, payable to the injured party, for unpaid, *pendente lite* support."

In the present case, the issue is more complex than in *Gant*, where the only act sought to be coerced was the payment of arrearages in support. Here, the initial injunction order covered a broad spectrum of activities and sought to limit the number of pickets and to prohibit the strikers from engaging in or threatening damage to property or injury to persons employed at the work sites, denying access to the employers' plant sites, trespassing on property owned, leased, or licensed by the employers, or parking vehicles along the highway near the entrances to the plant sites. Under the court's January 31, 1985 order, any violation of the injunction order would re-

---

4. The respondent employers cite a number of federal cases supporting the use of prospective fines in civil contempt cases. *See, e.g., Vincent v. Local 294*, 424 F.2d 124 (2d Cir.1970); *NLRB v. Truck Drivers & Helpers*, 450 F.2d 413 (3rd Cir.1971); *Hoffman v. Beer Drivers & Salesmen's Local Union 888*, 536 F.2d 1268 (9th Cir.1976). We do not find these federal decisions to be persuasive for the reason that they deal with civil contempt proceedings. Furthermore, their

analysis of the civil/criminal contempt dichotomy does not comport with our contempt law.

5. Our law also holds that forfeitures are not favored by the courts and will not be declared or enforced unless justice clearly demands it. *See Lange & Crist Box & Lumber Co. v. Haught*, 132 W.Va. 530, 52 S.E.2d 695 (1949); *Sturm v. Crowley*, 131 W.Va. 505, 48 S.E.2d 350 (1948); *Hill v. Vencill*, 90 W.Va. 136, 111 S.E. 478 (1922).

sult in a possible $10,000 fine regardless of the severity of the violation or the circumstances relevant to the violation.

Thus, the difficulty with the prospective fixed fine in this case is that the court, in advance of hearing any evidence of the subsequent circumstances surrounding any alleged violations of the court's order, selected an arbitrary amount as a fine, which it would impose for subsequent violations. This procedure fixes a rigid penalty that is then applied to subsequent violations, even though the subsequent violations may differ in character and quality from those which brought the original fine into being. Furthermore, such a procedure also ignores the question of the contemnor's ability to pay by the simple expediency of multiplying the prescribed penalty by the number of violations. Certainly, if we found the imposition of a prospective one-percent daily penalty in *Gant* to be beyond the authority of the circuit court, then there is even more reason to find the absence of such authority in the present case.

We, therefore, conclude that the circuit court had no authority to impose a prospective penalty in an indirect criminal contempt proceeding whereby a specific fine was imposed payable to the State for each subsequent violation of the court's order.[6]

For the foregoing reasons, the writ of prohibition sought by the UMWA is awarded.

Writ Awarded.

McGRAW, Justice, concurring:

I concur with the dissent's observation that the majority "opinion is no more illogical than the law it interprets." The law of contempt is logical, and so is the majority opinion. Where the primary purpose of the exercise of contempt power is to provide a

remedy to an injured party, the contempt is civil. Where the primary purpose of the exercise of contempt power is preservation of the authority and dignity of a court, the contempt is criminal. The dissent argues that the best indication of the purpose to be served by the imposition of a contempt sanction is not the sanction imposed, but the misconduct that triggered the sanction. The trial court, however, surely cognizant of the wisdom articulated in Cicero's ancient admonition to "Noxiae poena par esto" or "Let the punishment match the offense," *De Legibus*, III, 3, imposed a sanction commensurate with the perceived nature of the violation. The fine was payable to the State, not to Massey; the fine bore no relationship to any damages arguably suffered by Massey; and, the fine was based on the prohibition of a broad range of activities that affected Massey in varying degrees. The trial court's actions indicate that its motivation was retaliation and not remediation. This exercise of raw judicial power without benefit of proper lawful safeguards was properly rejected by the majority.

BROTHERTON, Justice, dissenting.

A syllabus point not included in the majority's opinion, but inherent in the logic of their decision might read as follows:

Where the trial court applies an incorrect sanction for a crime, this Court upon review will change the crime to fit the sanction. Facts tending to show which crime was actually committed are irrelevant and will not be explored on review.

Demonstrating this approach, the majority in this case set out the "purpose test" for distinguishing between criminal and civil contempt which we previously enunciated in *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812 (1981):

6. We decline to address the issue raised by the UMWA that as an unincorporated association, it could not be sued as an entity under Syllabus Point 2 of *State ex rel. Glass Bottle Blowers Ass'n v. Silver*, 151 W.Va. 749, 155 S.E.2d 564 (1967). Given our ultimate disposition of this case, we find it unnecessary to address this issue.

The parties also address the issue of whether a jury trial is constitutionally required under

the Sixth Amendment to the United States Constitution or under Article III, Section 14 of the West Virginia Constitution when a fine is assessed in a criminal contempt proceeding. We do not reach this issue because we have concluded on a more narrow ground that the circuit court was without authority to impose the prospective fine in this case.

Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate.

The majority went on to paraphrase *Robinson* by noting that where the sanction "is to compel compliance with a court order by the contemnor so as to benefit the party bringing the contempt action" the proceeding is civil contempt. However, if the purpose is to punish the contemnor for an affront to the dignity or authority of the court, or to preserve or restore order in the court, the contempt is criminal. After setting out this test, the Court *then completely ignored it.* Instead, the majority looked to the sanction applied to decide the nature of the crime. In this case, the sanction was a prospective fine made payable to the State. This type of sanction is generally one for criminal contempt. The Court, therefore, pronounced the crime one of *criminal* contempt.

No attempt was made by the Court to look to the facts to see what crime might actually have been committed. Had the majority explored the facts, they would have found the case to be clearly one of civil contempt. The contempt action was unquestionably designed to benefit Massey. The action was brought by Massey and prosecuted by its attorneys to control pick-eters at Massey's coal mines. The contempt was civil contempt.[1]

I feel strongly that where an incorrect sanction is applied for a transgression, this Court should alter the sanction and not the transgression.[2] Because my brethren feel otherwise, I respectfully note my dissent.[3]

I am authorized to state that Justice Neely joins me in this dissent.

---

1. The fact that this case had elements of criminal contempt as well as civil contempt does not change the nature of the contempt to criminal. Every contempt case, by definition, is an attempt to compel compliance with a court order. Therefore, even in the clearest of civil contempt cases, there will be some affront to the dignity of the court because its order was disobeyed. If this were to change the nature of the contempt to criminal, then there would be no civil contempt.

2. We are not the first court to make this mistake in reviewing a contempt order. *See generally,* Martineau, *Contempt of Court: Eliminating the* *Confusion Between Civil and Criminal Contempt,* 50 U.Cin.L.Rev. 677, 683–684 (1981).

3. In the majority's defense, their opinion is no more illogical than the law it interprets. There is no logical reason for distinguishing between civil and criminal contempt. The distinction serves no rational purpose and is the source of great confusion. Instead, we should review contempt procedures to see if the procedural safeguards were appropriate for the sanction imposed. *See generally,* Comment, *Contempt of Court: Some Considerations for Reform,* 1975 Wis.L.Rev. 1117.