350 S.E.2d 11

**Mary E. WILLIAMS**

v.

**The Hon. Steven D. NARICK, Judge, etc.**

**No. 17260.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1986.

Decided Oct. 29, 1986.

---

**12**

Brian A. Gallagher, Monty L. Preiser, Preiser & Wilson, Charleston, for petitioner.

Lester C. Hess, Jr., Wheeling, for respondent.

PER CURIAM:

■ In this proceeding, Mary Williams, the relator, seeks to have a civil action she filed in the Circuit Court of Marshall Coun-

ty set for trial. The Circuit Court of Marshall County stayed the trial of her action because it believed an order entered in a bankruptcy action pending in the United States District Court for the Eastern District of Virginia foreclosed the circuit court from trying the case. This bankruptcy order in general stayed further prosecutions of civil actions against A.H. Robins Company arising from its manufacture and distribution of an intrauterine device known as the Dalkon Shield. After examining the facts, we conclude the circuit court was incorrect in staying the civil action and, therefore, we grant the writ of prohibition.

The relator alleges in her complaint that in June of 1972, doctors working for the Wheeling Clinic inserted a Dalkon Shield into her, which caused her to develop infections and other complications that eventually required surgery rendering her sterile. The relator sued three doctors and the Wheeling Clinic for their alleged negligence in recommending the use of the Dalkon Shield and for their failure to remove the device before the additional complications developed. The manufacturer of the Dalkon Shield, A.H. Robins Company, was not sued in this action.

After the relator's suit was filed in 1982, the defendants filed their answers and no attempt was made by them to bring in A.H. Robins Company as a third-party defendant. The case proceeded through various discovery procedures with a pretrial conference scheduled for June 19, 1986, and a trial date for June 30, 1986. On May 29, 1986, counsel for several of the defendants filed a motion to stay further proceedings in Marshall County reciting that the Bankruptcy Court for the Eastern District of Virginia had entered on October 11, 1985, a preliminary injunction foreclosing further litigation against A.H. Robins Company in suits in which it is a codefendant with other parties as well as prohibiting further litigation against the other parties who were codefendants along with A.H. Robins Company.[1]

---

1. The preliminary injunction initially stated that A.H. Robins Company was a named defendant in approximately 5,000 civil actions and that

when it filed for bankruptcy in August of 1985 that: "Pursuant to 11 U.S.C. Section 362(a), all litigation against Robins in those approximately

This Bankruptcy Court order was affirmed on appeal in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986), where the Fourth Circuit in speaking of the reach of 11 U.S.C. § 362 of the federal Bankruptcy Act, relating to stays of court proceedings against the debtor, stated:

"Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants. The rationale for this narrow construction of the statute has been stated in *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196–97 (6th Cir.1983), and in our own case of *Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 126–27 (4th Cir.1983), and it need not be repeated here. However, as the Court in *Johns-Manville Sales Corp.,* 26 B.R. 405, 410 (S.D.N.Y.1983), remarked in discussing the oft-cited case, *Royal Trucks & Trailer v. Armadors Meritina Salvadoreana,* 10 B.R. 488, 491 (N.D.Ill.1981), 'there are cases [under 362(a)(1) ] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants' but, it adds, that in order for relief for such non-bankrupt defendants to be available under (a)(1), there must be 'unusual circumstances' and certainly ' "[s]omething more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties." ' " (Footnote omitted).

In *Piccinin,* the Fourth Circuit concluded that Robins' position as a codefendant in the litigation necessitated a stay of proceedings as against the other codefendants, particularly since the codefendants were either additional insureds under Robins' insurance policy or were covered by express indemnity agreements. Here, as we have earlier noted, Robins is not a party to this litigation and no insurance coverage or indemnity agreements are involved.

This case is more analogous to *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), where the defendant Pacor sought to obtain the benefit of a bankruptcy court's stay given to Johns-Manville, which had filed bankruptcy to avoid litigation involving asbestosis claims. It was Pacor's contention that since it had purchased asbestos products from Johns-Manville, which products were the basis of the plaintiff's cause of action against Pacor, the plaintiff's claim should also be stayed. Pacor had filed a third-party action against Johns-Manville which had been transferred into the bankruptcy court. Pacor argued that it had an implied right of indemnity against Johns-Manville, if Pacor were found liable to the plaintiff, and that both the original and its third-party claim arose out of a common set of facts and law.

The court in *Pacor,* 743 F.2d at 995, recognized that a potential claim of implied indemnity existed, but declined to hold that this was sufficient to grant a stay in the plaintiff's suit against Pacor, stating:

"In this case, however, there would be no automatic creation of liability against Manville on account of a judgment against Pacor. Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the Higgins-Pacor action could not give rise to any automatic liability on the part of the estate. All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action."

*See also Hanna v. Philadelphia Asbestos Co.,* 743 F.2d 996 (3d Cir.1984); *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541 (5th Cir.1983).

It is true that *Pacor* and *Hanna* were decided before the 1984 Bankruptcy Amendments, but in note 16 of *Pacor,* 743 F.2d at 996, the court stated:

---

5,000 civil actions was stayed automatically on August 21, 1985 upon filing of Robins' petition for protection from its creditors under Chapter 11." The order also states that in approximately 2,400 of the 5,000 suits against Robins, additional persons or entities other than Robins were named as codefendants. It was the continuation of these civil actions against the other codefendants that was the subject of the court's preliminary injunction.

"We note that, under new 28 U.S.C. § 1334, enacted as part of the 1984 Bankruptcy Amendments, the Higgins-Pacor matter could not have been heard in federal court without Higgins' consent. Rather, the district court under the new Act would be mandated to abstain from any such controversy at request of a party, because of the 'mandatory abstention' provision of § 1334(c)(2). The legislative history reveals that Congress was concerned about the *constitutionality* of granting to the federal courts 'related to' jurisdiction in cases where no independent basis for federal jurisdiction existed. *See* 130 Cong.Rec. S 6088–89 (May 21, 1984) (remarks of Sen. Dole)."

From these authorities, we are drawn to the conclusion that the order entered in the Bankruptcy Court for the Eastern District of Virginia involving A.H. Robins Company was not intended to foreclose the Circuit Court of Marshall County from proceeding to hear a civil case involving the Wheeling Clinic and several physicians who allegedly implanted and negligently failed to remove a Dalkon Shield in the relator where Robins was neither named as a codefendant nor as a third-party defendant.

■ Although the relator requests mandamus relief, we are treating her petition as one seeking a writ of prohibition. Customarily, we have utilized writs of prohibition when a circuit court exceeds its legitimate power or acts in excess of its jurisdiction, as we stated in Syllabus Point 1 of *State ex rel. UMWA International Union v. Maynard,* 176 W.Va. 131, 342 S.E.2d 96 (1985):

"A writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction exceeds its legitimate powers."

*See also* Syllabus Point 3, *State ex rel. McCartney v. Nuzum,* 161 W.Va. 740, 248 S.E.2d 318 (1978); Syllabus Point 5, *State ex rel. Smith v. Bosworth,* 145 W.Va. 753, 117 S.E.2d 610 (1960).

In the present case, we hold the Circuit Court of Marshall County exceeded its powers in granting a stay of the proceedings because the federal bankruptcy order did not authorize such a stay. For the foregoing reasons, a writ of prohibition is awarded prohibiting the circuit court's stay order.

Writ Awarded.